NEW YORK SECURITY & TRUST CO. v. LOMBARD INV. CO.

(Circuit Court, W. D. Missouri, W. D. July 1, 1896.)

**1. TRUSTS—GUARANTY FUND—PURCHASER OF ASSETS OF TRUSTEE.**

The L. Investment Co. and the B. Bank entered into a written contract by which it was agreed that the bank should furnish and recommend borrowers to whom the investment company should make loans on mortgage; the interest and commissions to be divided in agreed proportions, and the bank to guaranty the principal and interest of the loans to the extent of 2 per cent. To secure the bank's performance of the agreement, it was also provided that it should pay over to the investment company, each month, a sum equal to 2 per cent. of the moneys loaned during the month, which sums were to be held by the investment company as trustee, and were to remain and be kept intact, as security against any losses on each and every loan made on behalf of the company, and to be paid back to the bank when all such loans should have been paid. The investment company became insolvent. Its assets passed into the hands of a receiver, and were sold under an order of court. *Held*, that the contract affixed to the fund so created in the hands of the company the character of an express trust, of which the court, on the insolvency of the company and the sale of its assets, should appoint a new trustee, and that the purchaser of the company's assets took no title to the fund; a provision in the order of sale that persons claiming an interest in the estate must present such claims, or be barred, not applying to the beneficiary of such trust fund, but only to claimants against the general assets of the company.

**2. SAME—CHARGING TRUST FUND.**

The contract also provided that, in case of any default on the loans made through the bank, the investment company might advance, out of the trust fund, the whole amount in default, reimbursing the trust when collections should be made from the borrower, but on the final settlement only 2 per cent. of any losses by such defaults was to be deducted from the trust fund, as against the bank. *Held*, that this provision did not authorize the purchasers of the investment company's assets to charge against the trust the amount of claims proved against the company's estate, on its guaranties given to purchasers of the mortgages, the bank not having been a party to such guaranties.

Edward C. Wright, for Hyatt & Bright.
Graves & Clark, for Montana Sav. Bank.
Frank Hagerman, for receiver.

PHILIPS, District Judge. The questions to be decided on the agreed statement of facts and the record evidence submitted depend mainly upon the construction to be given to the contract entered into between the Lombard Investment Company and the Montana Savings Bank, of date May 27, 1891. The plain reading of this instrument is that the company was to furnish the money, and the bank was to furnish the borrower at its own expense. When the application of the borrower, on the recommendation of the bank, was accepted by the company, the bond and the mortgage were to be executed to the company, and then turned over by the bank to the company. The money was to be paid to the borrower through the bank. The company was to receive the undivided interest to the extent of 6 per cent., and the excess of interest and any commission received from the borrower was to be divided between the company

and the bank, in the proportion and manner specified in the contract.  As an earnest of the good faith of the bank in selecting borrowers and recommending loans to them, the contract provides that:

"It [the bank] will, to the extent only of 2 per cent. on moneys loaned by said first party, on application sent to it by said party of the second part, guaranty and save the said party of the first part harmless from all losses on principal or interest, and all moneys loaned by it upon applications which said party of the second part shall have recommended, and all costs and expenses that shall accrue upon any matter relating to the same; and, for the purpose of securing to the said party of the first part the true and faithful performance of the agreement by the party of the second part, it is hereby agreed by and between the said parties that the party of the second part shall, on or before the third day of each month, pay over to the Lombard Investment Company, as trustee, a sum equal to two per cent. on all moneys loaned during the preceding month by said party of the first part, upon applications that said party of the second part shall have recommended."

The contract then, in express terms, affixes to this fund, when placed in the hands of the company, the character of an express trust.  It designates the company "as trustee," and the fund "as a trust fund for the protection of the loans made for the party of the second part by party of the first part; that the sum so paid over, with the income from the same, shall be held in trust for the uses and purposes" which are set out.  It then proceeds to direct and define the duties of the trustee in respect of the use and management of the trust fund.  It leaves no place for the application of the doctrine of a power, coupled with an interest, from which the authority to sell and dispose of property so as to pass the absolute title might be inferred.  But even if it were admissible to say that inasmuch as possession of the trust fund was given, by the instrument creating the trust, to the trustee, whose power is coupled with an interest, so that the trustee might transfer the possession, yet, the trustee being an insolvent corporation, which has ceased to be a going concern, and the property yet remaining in the trustee's possession, a court of equity, after acquiring jurisdiction over the parties and the subject-matter, ought not to permit the delivery of the trust fund to a purchaser at a judicial sale of the estate of the insolvent corporation.  In such condition, it is the clear duty of the court to designate a new trustee to execute and carry out the provisions of the trust, preserving intact the rights and interests of both parties to the contract.  The written instrument specifically directs that said fund shall be reserved by the trustee as a special deposit until the same shall accumulate to as much as $1,000, when it shall be invested, at the discretion of the trustee, in such bonds or mortgages as it shall select, and that so much of the investment thereof as might become necessary should, from time to time, be applied towards losses on the principal or interest sustained on loans on the payment of any mortgage made by the bank on behalf of the company.  Then, to further emphasize the trust character of this fund, it is declared "that the trust fund, together with its accumulations, shall remain and be kept intact as security against any losses on each and every loan made on behalf of the company."  And it is further provided that the bank shall, at stated periods in each year, render to the trustee company a statement of all funds

received during the preceding six months; "and, when all the loans so made have been paid, then the trust fund and its accumulations shall be handed over to the bank, in cash, or by the transfer of the securities the trustee may hold in trust under this agreement, and this trust shall then terminate, and said trustee shall be relieved of all liability under the same." So that the trust attaches to the property in the hands of the trustee, and it continues to be impressed therewith until the end of the trust, as specified, has been reached.

This fund, and the bonds and mortgages in which it has been invested, were inventoried and scheduled by the receiver as "Montana Savings Bank, Helena, Mont., Trust Fund." The receiver took no other or greater interest in this fund than the trustee, the Lombard Investment Company, had at the time of the appointment of the receiver. He became, by virtue of his appointment, the naked legal custodian of the fund, cum onore, impressed with the trust under the contract. He has ever recognized it as a trust fund, and has kept it on the books of the company, as he found it when he took possession, separate and apart from the general assets of the company. The order of sale made by this court, as in law it could only do, directed the sale of the property rights in the assets of the Lombard Investment Company in the hands of the receiver. The purchasers at said sale had the means of information at their command to ascertain the precise character of the interest of the Lombard Investment Company in this asset. The schedule on file in this court was an open book to them. They acquired, by such purchase, only such right, title, and interest as the receiver could sell and convey to them. To such a purchaser, who is in the nature of a speculator, the rule of caveat emptor applies.

It is contended by counsel for interveners that, under the decree of court for the sale of the assets of this estate, a time limit was fixed, in which all persons claiming an interest in this estate should present their claims to the master for allowance, and that these interveners, having failed to present their claims within the prescribed time, are now barred. The eighth paragraph of the decree, relied upon to support this contention, has not, in my judgment, any application to this case. The court had in mind the claims of creditors and stockholders "entitled to share in the assets of the insolvent" estate. This fund, at the time of the sale, had not become an asset of the estate, because the purposes of the trust had not been subserved so as to give the company any tangible, ascertainable, separate interest in the fund. As evidence of what was in the mind of the court, the decree declared "that no person shall be entitled to participate in the general assets of the insolvent defendant who shall not present and establish his claim in accordance with this decree." Under the contract in question, the rights of the respective parties in this fund cannot be ascertained and determined until the loans made through the bank shall be adjusted and wound up. Whether or not the bank shall be entitled to have all or any part of this fund and its proceeds returned to them will

depend entirely upon the losses, if any, and the extent thereof sustained by the company on the loans made by and through the bank. Nor are these interveners in position to demand and receive this fund, or any part thereof, until they can establish the amount of the loss sustained in the transaction.

This brings us to the next contention made by the interveners, which is that the Lombard Investment Company, in negotiating the bonds and mortgages taken on these loans made through the Montana Bank, guarantied to the purchasers the payment thereof, and that, since the appointment of the receiver, the holders of said bonds have proven up against the estate defaults of the mortgagors to the extent of about $75,000. This contention is predicated, I presume, upon the following provisions, in substance, in the contract: That, in case default should occur in the payment of any interest on the coupons or the principal of any loan made through the bank on its recommendation (including taxes, insurance, and the like, if paid by the trustee) for a period of 60 days, the trustee is authorized to advance the same out of the trust fund, and when such interest and principal sum, and the like, should be collected from the maker, the proceeds should be taken by the trustee, in order to keep unimpaired the trust-fund account. The plain purport of which is that, in case of such default for the period of 60 days, the trustee is authorized, for the indemnity of the company, to apply the trust fund or its proceeds to the payment of such defaulted sums, and, if afterwards there should be any collections made from the mortgagor, the same should be paid over to the trustee, to be placed to the credit of the trust fund, so as to maintain it as far as possible unimpaired. But in the final adjustment between the company and the bank, after the losses are ascertained, the company is entitled to retain and appropriate, out of the trust property, a sum sufficient to reimburse itself to the extent of 2 per cent. of the amount of such losses. If there have been, as claimed by the interveners, defaults in the payment of interest or principal or taxes and insurance, the trustee is entitled to withhold of this trust fund the whole sum, if required, to make good such default. But, in respect of the final losses sustained on account of the loans made on the recommendation of the bank, the sums claimed by interveners to have been allowed against the Lombard estate, on its guaranty of the bonds negotiated by it, are not admissible in evidence against the bank, as that allowance is clearly res inter alios acta. The bank, not having been a party to that transaction, is not concluded thereby. There must be an ascertainment in proper mode between the trustee and the bank, either by convention or coercion, of the amount of actual losses sustained on account of such loans, after exhaustion of the securities, in order to a proper adjustment of the 2 per cent. guaranty by the bank.

The trustee, the Lombard Investment Company, being a corporation, and having become insolvent and ceased to be a going concern, and the parties being before the court, it is its duty to appoint a new trustee, to carry out the provisions of the trust in accordance with the contract, as construed in this opinion; and the court will

continue the cause at bar, retaining jurisdiction of the parties and the subject-matter, for adjustment of the accounting under the trust. Decree accordingly.