ÆTNA LIFE INS. CO. et al. v. LEONARD et al.

(Circuit Court of Appeals, Fifth Circuit. April 4, 1911.)

No. 2,096.

RECEIVERS (§ 154*)—EXPENSES—APPORTIONMENT.

Mortgagees of part of an insolvent corporation's property are not chargeable with part of the expenses of a receivership, which they did not seek, and which appears to have been conducted in the interest of unsecured creditors.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 279-282; Dec. Dig. § 154.*]

Appeal from the Circuit Court of the United States for the Western District of Louisiana.

Receivership proceedings against the Ozone Lumber Company and others. From an order apportioning expenses and taxes, the Ætna Life Insurance Company and others appeal, adversely to A. H. Leonard, receiver, and others. Affirmed.

W. P. Hall and E. W. Sutherlin (G. W. Jack and W. A. Mabry, on the brief), for appellants.

J. D. Wilkinson and Leon R. Smith (N. C. Blanchard, on the brief), for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PER CURIAM. From the record before us, containing parts of the proceedings below, it appears that A. H. Leonard, by a consent order, was appointed receiver of four corporations—the Ozone Lumber Company, Limited, and three others. The property of the corporations has been sold and the proceeds distributed, and no objections are urged to anything that has been done except on one point. The receiver was allowed $25,000, the attorney for the receiver $15,000, and the special master $2,000, and various other expenses of the receivership were allowed and paid. The property sold for a large sum, about $400,000. Excluding several special properties that were sold separately, so as to preserve the particular liens on the same, the property of the Ozone Lumber Company, Limited, sold for $375,000. This amount being divided in proportion to the appraisement, the timber or mortgaged property realized $290,000; the other fund, or unmortgaged property, $85,000.

The lien or mortgages of the Ozone Lumber Company, Limited, applied only upon the timber. The other property was unincumbered save for some special liens. Out of the fund derived from the timber, William Edenborn, who held the vendor's lien on the timber, was paid $189,050 in full of his privileged claim. The claims of the other interveners, arising out of the mortgage indebtedness alone amounted to $131,450, and, as the proceeds of the sale of the mortgaged property (the timber) was not sufficient to pay their second mortgage, they were paid only $96,509, becoming ordinary creditors for the balance, $34,941.

No objections are made to these allowances, nor to any item of expenses, but the sole question relates to an apportionment of the expenses and taxes. The objection can be best shown by the following, which is the only assignment of error:

"The court erred in refusing to charge the mortgaged property of the Ozone plant with its proportion of the taxes and of the costs of the receivership, including the fees of the receiver and of the attorneys, which were based largely upon the amount of the sale of this mortgaged property, which should have been made to bear its part of the costs of selling the property and realizing the fund for the mortgage creditors."

The appellants' contention is that the expenses of the receivership should be so apportioned between the mortgaged property and the unincumbered property as to charge 77 per cent. of such expenses to the mortgaged property, taking from the mortgagees about $40,000 that has already been paid to them on the mortgage debt.

There is nothing in the record to show that it would be equitable or just to permit the large expenses of the receivership, or any part of it, to be used to lessen the security of the mortgagees. The mortgagees did not ask for the appointment of a receiver, nor does the record show that it was to their interest to have a receiver appointed. There is nothing to show that they were put on notice that a receivership suit costing nearly $50,000 was being conducted at their expense. On the contrary, the bill asking for a receiver is in the nature of a "creditors' bill," and on its face shows that it was brought in the interest and for the benefit of inferior lien and general creditors. It appears that the entire proceeds of the mortgaged property were insufficient to pay the mortgage debts. We think the court ruled correctly in refusing to take any part of such proceeds to pay such expenses. A different rule would probably prevail where the mortgagees had the receiver appointed, or where the appointment was necessary to protect their interests.

We are assured by statements at the bar that the taxes and the costs of the receivership have been fully paid by the receiver pursuant to the decrees of the court, which are not copied in the record, being omitted from the transcript; the "same being made in accordance with præcipe for appeal." These omitted decrees, we presume, directed the payment of taxes, costs, and expenses out of the general fund in the hands of the receiver, and applied the entire proceeds of the sale of the mortgaged property to the payment of the first mortgage and the part payment of the second mortgage.

We find nothing in the record before us that would make it proper for this court to sustain the assignment of error.

Affirmed.