In re CUTLER & JOHN.

(District Court, E. D. North Carolina. January 7, 1916.)

1. BANKRUPTCY ⬦474—COSTS AND FEES—LIABILITY OF SECURED CREDITORS.

An insolvent firm, whose property was covered by valid mortgages executed more than four months prior thereto, executed a deed of trust or assignment directing a sale of the property, the payment of the mortgages, and the payment of any balance to general creditors, whereupon unsecured creditors filed a petition in bankruptcy, and upon demand the assignee surrendered the property to the trustee, who sold it for less than the secured indebtedness. There were practically no other assets. The mortgagees took no action, except to assert their right to the proceeds of the property, and did not ask the aid of the bankruptcy court to foreclose their mortgages. *Held*, that the cost of the bankruptcy proceeding, including the trustee's commissions and the allowance to the counsel for the petitioning creditors, equal to 15 per cent. of the proceeds of the property, could not be paid from such proceeds, as neither the execution of the deed of assignment, the surrender of possession by the assignee, nor the failure to oppose an adjudication affected or imposed any liability upon the property of the mortgagees, and their rights could not be affected by the existence or nonexistence of other assets.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 878–884; Dec. Dig. ⬦474.]

2. BANKRUPTCY ⬦58—ACT OF BANKRUPTCY—ASSIGNMENTS FOR BENEFIT OF CREDITORS.

Where an insolvent firm, whose property was covered by valid mortgages executed a deed of trust or assignment of the property directing a sale thereof, the payment of the mortgages and the payment of the balance to general creditors, this constituted an act of bankruptcy within Bankr. Act July 1, 1898, c. 541, § 3a (4), 30 Stat. 546 (Comp. St. 1913, § 9587), specifying as an act of bankruptcy the making of a general assignment for the benefit of creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 57, 72–79, 83; Dec. Dig. ⬦58.]

3. BANKRUPTCY ⬦258—ADMINISTRATION OF ESTATE—INCUMBERED PROPERTY.

When property of a bankrupt is subject to valid liens or mortgages, the trustee may, if in his judgment the equity is of value and will yield any benefit to the estate for unsecured creditors, take possession and sell it free from the mortgage liens, in which event the lien will attach to the proceeds in his hands, or he may sell the equity of redemption.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 358, 359, 362; Dec. Dig. ⬦258.]

4. BANKRUPTCY ⬦178—PROPERTY PASSING TO TRUSTEE—AVOIDANCE OF ASSIGNMENTS FOR CREDITORS.

Where an insolvent firm, whose property was covered by mortgages, executed an assignment directing a sale of the property, the payment of the mortgages, and the payment of any balance to general creditors, whereupon a petition in bankruptcy was filed, the adjudication in bank-

ruptcy avoided the assignment, and the property, subject to the mortgages passed to the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 221, 264–274, 283, 284; Dec. Dig. ☞178.]

5. BANKRUPTCY ☞247—DUTIES OF TRUSTEE—INCUMBERED PROPERTY—REQUESTING INSTRUCTIONS.

When a trustee finds that a bankrupt owns property subject to liens, he should petition the court for instructions as to the course which he should pursue.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 346; Dec. Dig. ☞247.]

6. BANKRUPTCY ☞231—MEETINGS OF CREDITORS—PURPOSES.

Under Bankr. Act, § 55d (Comp. St. 1913, § 9639), providing that a meeting of creditors subsequent to the first one may be held at any time and place, when all creditors who have secured the allowance of their claims sign a written consent, and section 55e, providing that the court shall call a meeting of creditors whenever one-fourth or more in number of those who have proven their claims shall file a written request to that effect, the referee, if in his judgment it is advisable, may call a meeting of the creditors in order that they may be heard before any action is taken with respect to property subject to liens, subjecting the estate to possible cost and expense.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 541; Dec. Dig. ☞231.]

In Bankruptcy. In the matter of Cutler & John, bankrupts. On petition for review, based upon exceptions of the Bank of Washington, to an order of the referee. Reversed.

Small, McLean, Bragaw & Rodman, of Washington, N. C., for petitioner.

Daniel & Warren, of Washington, N. C., for trustee.

CONNOR, District Judge. The facts essential to the decision of the question presented by the certificate of the referee and the admissions of counsel are:

(1) Bankrupts executed to Sebron Cox, May 30, 1914, a mortgage on their property, to secure the payment of a debt of $1,000.

(2) On October 15, 1914, they executed a mortgage on the same property to the Bank of Washington to secure a debt of $1,000.

(3) On January 6, 1914, they executed to the Bank of Washington, another mortgage on the same property to secure the payment of a debt of $2,000. All of the mortgages were duly recorded more than four months prior to June 19, 1915.

(4) Within four months prior to June 19, 1915, said bankrupts executed to W. B. Rodman, Jr., a deed of trust or assignment of the same property, directing a sale thereof, and, from the proceeds, the payment of the mortgages in the order of their priority and the balance to their general creditors. The assignee took possession of the property—a stock of goods—and made an inventory thereof. He notified the creditors that he would proceed to advertise the property for sale, either publicly or privately, as should appear to the best interest of all parties concerned.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] On June 19, 1915, certain unsecured creditors filed a petition asking that they be adjudged bankrupt, assigning as an act of bankruptcy the execution of the deed of assignment to W. B. Rodman, Jr. Pursuant to the prayer of petitioning creditors, the said Cutler & John were adjudged bankrupts, and at the first meeting of the creditors L. C. Warren, Esq., was duly elected and qualified as trustee. Upon demand of the trustee, the assignee surrendered the property to him, and, pursuant to an order of the bankrupt court, he sold said property for the sum of $3,100. He has collected, on account of choses in action due the bankrupts, $12.58. The mortgagees asserted their claim to the proceeds of the property, by virtue of the mortgages held by them, as hereinbefore set forth. There is no controversy in regard to the validity or the amount of the debts, or the mortgages executed for their security. The referee was of the opinion that the cost incurred in the proceeding in bankruptcy, including commissions, to the trustee, and the allowance to counsel for petitioning creditors, aggregating $342.09, should be paid from the proceeds of the property, and the balance paid to the mortgage creditors, in the order of their priority. To this ruling the Bank of Washington duly execpted and filed petition for review. This is another of the numerous cases in which the general creditors and the trustee overestimate the value of the property of bankrupts upon which there are valid liens.

[2] The execution of the deed of assignment to W. B. Rodman, Jr., the assignors being insolvent, was an act of bankruptcy. Bankr. Act, § 3, subsec. 4. They made no objection to the adjudication. This, however, did not affect or impose any liability upon the property of the mortgage creditors. The execution of the deed of assignment did not have such effect. The surrender of possession to the trustee, by Mr. Rodman, as assignee, did not affect the rights of the mortgagees. He was not entitled to hold it against the trustee. While, as a general proposition, it is true that, by the adjudication in bankruptcy and the election and qualification of the trustee, all of the property of the bankrupt is brought within the control and jurisdiction of the bankrupt court, it is equally true that liens, mortgages, etc., valid under the state laws and the bankrupt law, are preserved in their integrity. Bankr. Act, § 67d (Comp. St. 1913, § 9651).

[3] When the property of a bankrupt is subject to valid liens or mortgages, the trustee is entitled to pursue one of two courses: He may, if in his judgment the equity in the property is of value and will yield any benefit to the estate for the unsecured creditors, take possession of the property and bring it to sale free of the mortgage lien, in which event the lien will attach to the proceeds in his hands, and the lien on the property be discharged; or he may sell the equity of redemption. He will exercise his best judgment, with the approval of the bankrupt court. In neither case can he, without the assent of the lien creditor, reduce the value of the security by attaching to the proceeds of the property liability for the cost of administration in bankruptcy. The correct rule, as I apprehend, in such cases, is stated by Judge Hook in In re Harralson, 179 Fed. 490, 103 C. C. A. 70, 29 L. R. A. (N. S.) 737:

"A court of bankruptcy should not assume charge of incumbered property and liquidate the liens on it, unless there are reasonable grounds for believing some advantage will accrue to the bankrupt's estate. If the validity of the liens is unquestioned, and their amount is such that there is probably no excess of value in the property, it should be surrendered to the lienholders, or others entitled, unless some other reason appears for retaining control. A court of bankruptcy is not a court of general jurisdiction for the adjudication of controversies or the administration of assets in which the bankrupt's estate is in no wise interested. If, however, cognizance is taken, it should be assumed some benefit or advantage was expected to accrue to the general creditors; and if it results otherwise it is equitable to make the general estate bear the cost of the proceeding. Here the proceeds of sale did not equal the admitted encumbrance, and the deficiency should not be further increased by deducting the commissions of the officers, if there is a general estate against which they can be charged. This is in analogy to the general practice in equity in foreclosure."

In that case the court directed the entire proceeds of the sale to be applied to the mortgage indebtedness. I am unable to perceive how the rights of the mortgagee can be affected by the existence or nonexistence of other assets. The cases relied on by the trustee do not conflict with the decision cited. In re Iowa Falls Mfg. Co. (D. C.) 140 Fed. 527, the only question presented was whether the trustee was entitled to commissions, out of the general assets, on the entire proceeds of property sold under the decree of the state court, or only on the net amount received by him, after paying the mortgage indebtedness. It was held that he was entitled to commissions only on the net amount received. In re Sanford Furniture Mfg. Co. (D. C.) 126 Fed. 888, the secured creditor proved his claim, participated in the election of the trustee, and afterwards "surrendered possession of the property to such trustee, who afterwards sold the property at the instance and by the consent of all parties concerned."

Here, the only action taken by the mortgagees was to file their claim, asserting their right to the proceeds of the property. Certainly they did not, by simply asserting the right to the proceeds of the mortgaged property, subject themselves to a liability for the entire cost of the proceeding in bankruptcy, amounting to some 15 per cent. of the proceeds. They were not asking the aid of the court to foreclose their mortgages. In Re Alison Lumber Co. (D. C.) 137 Fed. 643, the course pursued by the mortgagees is thus described by Judge Speer:

"They have appeared in the bankruptcy court, selected it as their forum, availed themselves of the services of its officers, and utilized its process to collect their claims."

They were held liable to contribute their pro rata part of the cost of administration. Nothing of that kind appears in this case.

In Re Goldsmith (D. C.) 118 Fed. 763, cited by counsel for the trustee, it is held that secured creditors, whose property has been taken and sold by the trustee, are not required to prove their claims and have the proceeds paid them as a dividend, but may, in any appropriate manner, intervene and demand the payment to them of the proceeds of the property upon which they have a valid lien. This opinion, and authorities, may be examined with profit.

It is to be regretted that the petitioning creditors have secured the services of the officers of the court, and an expenditure of sums aggregating $342.09, under the mistaken belief that there was a valuable equity in the mortgaged property. But their mistake cannot be charged to the mortgagees. Their rights were based upon a valid contract, and without any act on their part surrendering them they cannot be affected by the proceedings in the bankrupt court. What the liability of the petitioning creditors may be to the officers for their costs and fees is not presented in this proceeding and is not before the court. The mortgagees are entitled to be paid the amount of their debts, to the extent of the proceeds of the property covered by the mortgages, without any diminution by reason of cost or expenses incurred in the proceeding in bankruptcy.

[4] It is suggested that Mr. Rodman, as assignee, collected some small amount from the accounts due the bankrupts. If these were not covered by the mortgages, the right to have such amounts paid over to, or retained by, the trustee, is not presented upon this record. Of course, the adjudication in bankruptcy avoided the deed of assignment, and the property assigned, subject to the mortgages, passed to the trustee.

[5, 6] When a trustee finds that the bankrupt owns property subject to liens, he should present a petition to the court asking for instructions as to the course which he should pursue. The referee, if in his judgment, it is advisable, may call a meeting of the creditors, to the end that they may be heard before action is taken, subjecting the estate to possible cost and expense. Bankr. Act, § 55, subsecs. "d," "e"; Collier on Bankruptcy (10th Ed.) 696.

The order of the referee is reversed.