### SEABOARD NAT. BANK v. ROGERS MILK PRODUCTS CO., Inc., et al.

Circuit Court of Appeals, Second Circuit.
August 18, 1927.

No. 323.

1. Judicial sales ⬧50(2)—Generally property should not be sold free of liens, transferring lien to proceeds, unless there is reasonable prospect of surplus for general creditors.

Equity has power under proper circumstances to sell property free of liens, transferring lien to proceeds; but such power should generally not be exercised, unless there is rea-

sonable prospect that surplus will be left for general creditors.

2. Receivers ⬧135—Sale of mortgaged property free of liens for net proceeds less than mortgage bonds held improper.

In receivership proceedings, sale of realty subject to mortgage free of liens, which were transferred to proceeds, for sum greatly less than sufficient to satisfy mortgage bondholders, without their consent, which would not benefit general creditors, but would only benefit receivers and attorneys, through fees, was error.

3. Appeal and error ⬧635(1)—Under incomplete record, mortgagee, pursuing proceeds of property sold free of liens, will not be thrown out of court for failure affirmatively to show discharge of mortgage.

In receivership proceedings, where record was not complete, mortgagee in trust for bondholders, pursuing proceeds of mortgaged property sold free of liens, will not be thrown out of court for failure of affirmative showing that lien of mortgage was discharged.

4. Receivers ⬧145—Mortgage bondholders held entitled to proceeds of mortgaged property sold free of liens, subject only to deduction of actual expenses for preserving property and sale.

In receivership proceedings, proceeds from sale of mortgaged property free from liens should have been ordered paid to mortgage bondholders, subject, at most, only to deduction of actual expenses of preserving property and creating fund by sale; it being immaterial that no general estate remained to compensate receiver or trustee in bankruptcy or their attorneys, especially where fund realized was less than valid incumbrance.

5. Receivers ⬧145—Proceeds of mortgaged property sold free of liens may not be charged with general expenses of administering receivership estate.

In receivership proceedings, where mortgaged property was sold free of liens, which were transferred to proceeds, such fund may not be charged with general expenses of administering receivership estate.

6. Receivers ⬧145—Holder of lien on mortgaged property sold free of liens should file intervening petition, but may be ordered on reasonable notice to assert rights.

In receivership proceedings, holder of lien on mortgaged property sold free of liens, which was transferred to proceeds, should assert claim to fund by filing intervening petition, and he may be ordered, on reasonable notice, to come in and assert his rights.

7. Receivers ⬧145—In receivership proceedings, general order requiring creditors to file claims held not to require holders of liens on mortgaged property sold free of liens to intervene.

In receivership proceedings, general order, on appointment of receiver, requiring creditors to file claims within specified time, did not require holders of mortgage bonds, secured by mortgage on property sold free of liens, which were transferred to proceeds, to come in and assert rights.

**8. Receivers ☞145—Refusal to allow holder of bonds secured by mortgage to file claim as general creditor held not to affect rights of mortgagee or bondholder as to fund derived from mortgaged property.**

In receivership proceedings, refusal to allow holder of mortgage bonds to file claim as general creditor without asserting any priority because of mortgage, although apparently based on mortgage bonds, did not affect rights of mortgagee in trust or of bondholder to share in fund from sale of mortgaged property free from liens, which were transferred to proceeds.

**9. Receivers ☞145—Order distributing proceeds of mortgaged property to general expenses of receivership, if entered without notice, may be set aside at any time before estate is closed.**

In receivership proceedings, if proper notice was given to mortgage bondholders and their trustee of purpose to use proceeds of mortgaged property sold free of liens, which were transferred to proceeds, to general expenses of receivership, payments could not be attacked on appeal from order of distribution, but, if entered without notice to parties interested, or might be set aside at any time before closing of estate.

**10. Receivers ☞145—Order distributing proceeds of mortgaged property to pay general expenses of receivership held erroneous, except as to payment of state franchise tax.**

In receivership proceedings, where mortgaged property was sold free of liens, which were transferred to proceeds, order distributing fund derived from property in payment of state franchise taxes, attorney's fees, and to certain bondholders who had proved claims was error, except as to payment of franchise tax, which comes ahead of mortgage.

**11. Taxation ☞510—Franchise tax is prior to mortgage, even though subsequently levied.**

Franchise tax comes ahead of mortgage, even though levied after mortgagor creates mortgage lien.

**12. Receivers ☞145—Mortgage trustee may assert lien on proceeds of mortgaged property, and appeal from adverse order.**

In receivership proceedings, where mortgaged property was sold free of liens, which were transferred to proceeds, although court may, in discretion, distribute fund directly to mortgage bondholders, instead of turning it over to mortgage trustee for distribution, such trustee may assert lien to protect interest of mortgage bondholders, and may appeal from order disregarding it, regardless of fact that some of bondholders may fail to come in, since their share must be held for them.

**13. Receivers ☞145—Share of mortgage bondholders failing to claim proceeds of mortgaged property in receivership proceedings must be held for them.**

In receivership proceedings, in which mortgaged property was sold free of liens, which were transferred to proceeds, share of bondholders who failed to come in and claim part of proceeds must be held for them.

**14. Receivers ☞145—On remand, where jurisdiction to order sale of mortgaged property is doubtful, master should first ascertain jurisdiction (Judicial Code, § 55 [28 USCA § 116]).**

On reversal and remand of cause, where jurisdiction of court in receivership proceedings to order sale of mortgaged property free of liens and to transfer liens to proceeds, under Judicial Code, § 55 (28 USCA § 116 [Comp. St. § 1037]), appeared doubtful, master, on reference, should first ascertain court's jurisdiction of subject-matter of fund.

**15. Receivers ☞145—On reversal of order of distribution of proceeds of mortgaged property sold free from liens, impeachable payments must be repaid.**

On appeal from order of distribution of proceeds of mortgaged property sold in receivership proceedings free from liens, which were transferred to fund, master should ascertain amount of lien on proceeds of sale, what items of expense were chargeable against it, and to what extent, if any, payments authorized by order, or payment of fees and allowances to receivers, attorneys, and others, were impeachable, and any impeachable payments thereunder must be repaid, in view of fact that proceeds of sale were not sufficient to pay mortgage bonds constituting lien thereon.

**16. Receivers ☞145—In receivership proceedings, on failure of proceeds of mortgaged property to pay mortgage bonds, attorney's fees and bondholders' claims paid therefrom should be repaid.**

In general receivership proceedings, where proceeds of mortgaged property sold free of liens, which were transferred to proceeds, were insufficient to pay mortgage bonds, and left nothing for general creditors, master, on reversal and remand of cause, should ascertain to whom unauthorized payments in form of fees to attorneys in receivership proceedings and to certain bondholders who had proved claims were made, and such payees should be required to repay.

**17. Receivers ☞145—In receivership proceedings, proceeds of mortgaged property held distributable to mortgage bondholders, with deduction of reasonable fee to trustee.**

In receivership proceedings, proceeds of mortgaged property sold free of liens, which were transferred to proceeds, replenished by unauthorized payments which should be collected, should be distributed to mortgage bondholders, with deduction of reasonable fee to mortgage trustee for services in preserving mortgage lien.

Appeal from the District Court of the United States for the Southern District of New York.

Receivership proceeding by the Seaboard National Bank against the Rogers Milk Products Company and others. From an order of distribution of the proceeds of certain mortgaged property, Edwin H. Spence, trustee for mortgage bondholders, appeals Reversed in part and remanded.

July 24, 1923, the District Court for the Southern District of New York appointed receivers for the defendant Rogers Milk Products Company, Inc., on a creditor's bill. Ancillary receivers were appointed in the Northern district on October 29, 1923.

The defendant owned real estate located in Oneida and Oswego counties, which are in the Northern district of New York. The real estate in Oneida county was known as the Booneville plant, and was not subject to the Spence mortgage, hereinafter mentioned; that in Oswego county was known as the Pulaski plant and the milk feeding stations, and was subject to a mortgage to Edward H. Spence, trustee, securing bonds of an aggregate face value of nearly $500,000. This mortgage was not made by the defendant, but by Rogers Milk Corporation, which was apparently a predecessor in title of defendant. On January 10, 1924, the District Court, over the protest of Edward H. Spence, trustee, and without consent of the bondholders secured by the mortgage to him, ordered the real estate to be sold free of incumbrances, the proceeds, however, to remain subject to valid liens. No appeal was taken from that order. The receivers sold the Pulaski plant and the milk feeding stations for a total of $37,000, and the sales were thereafter confirmed by the court.

On November 13, 1924, the court ordered payment of fees and allowances to the receivers, to attorneys, and to others, which, as there were no other funds, would have to come out of the proceeds of the sale of the mortgaged premises, although no reference was made in the order to the lien of the mortgage upon such proceeds. That order was not appealed from.

On November 21, 1924, an order was entered denying the petition of Spence & Co., Inc., for leave to file a claim. Apparently its claim was based on ownership of certain of the mortgage bonds, but its claim was made as a general creditor, and without asserting any priority because of the mortgage.

Thereafter Edward H. Spence, as trustee, petitioned for an order that the receivers pay over to him the full amount of the proceeds of sale of the mortgaged property, apparently ignoring the fact that these proceeds were no longer unimpaired. The trustee in bankruptcy of the mortgagor moved that the proceeds be paid to him. The state of New York made application for payment of franchise taxes levied against the defendant, and the receivers asked leave to distribute out of the funds in their hands a small dividend to such bondholders as had filed their claims, and the remainder to their own attorneys. On March 4, 1925, the court ordered distribution as follows: (1) Payment of franchise taxes; (2) allowance of $250 to the attorney of the trustee in bankruptcy of the mortgagor, Rogers Milk Corporation; (3) a dividend of 5¾ per cent. to three bondholders who had proved claims totaling $170,000; (4) the balance to attorneys for the receivers. From this order Spence appealed.

The appeal came before us at a previous term, and it appearing that only the receivers had been cited as appellees, an order was entered granting appellant leave to take out an alias citation to bring in additional parties interested in the appeal. 16 F.(2d) 271. This he has now done.

Charles G. Hill and John W. App, both of New York City, and Edwin H. Spence, for appellant.

McManus, Ernst & Ernst, of New York City (Irving L. Ernst, of New York City, of counsel), for appellees receivers, American Exchange Irving Trust Co., McManus, Ernst & Ernst, and Curley C. Hoffpauir.

Albert Ottinger, Atty. Gen., of the State of New York (Robert P. Beyer, Deputy Atty. Gen., of counsel), for appellee New York State Tax Commission.

Before L. HAND and SWAN, Circuit Judges, and CAMPBELL, District Judge.

SWAN, Circuit Judge (after stating the facts as above). [1, 2] There is no doubt of the power of a court of equity under proper circumstances to sell property free of liens, transferring the lien to the proceeds. But generally this power should not be exercised unless there is a reasonable prospect that a surplus will be left for general creditors. See In re Franklin Brewing Co., 249 F. 333, 335 (C. C. A. 2); In re National Grain Corp., 9 F.(2d) 802, 803 (C. C. A. 2); In re Harralson, 179 F. 490, 492, 29 L. R. A. (N. S.) 737 (C. C. A. 8); Remington, Bankruptcy (3d Ed.) § 2583. These cases relate to sales in bankruptcy, but authority for selling free of liens is found in the general equity powers of the bankruptcy court, and we think the principle is equally applicable to equity receiverships. The case at bar illustrates the wisdom of such rule. Here a fund of $37,000 was realized from the mortgaged premises, and under the distribution which the receivers seek to sustain less than $10,000 of it is to be paid to the mortgage bondholders, although their bonds exceed many times the

total fund. The rest is to be eaten up by expenses of administration, principally fees for receivers and attorneys. They are the only ones to profit by having sold the property under the receivership, instead of allowing the mortgage to be foreclosed in the usual manner. It is a shocking result, and such as justly brings receiverships into disrepute in the popular mind.

Even if there was a dispute about the validity of some of the bonds, as is suggested in one of the affidavits, that dispute was not alleged in the petition for sale, and there is no doubt but that there were enough valid bonds, so that no equity could remain for general creditors. We can conceive of no benefit which the estate in receivership could obtain by selling free of liens, and of no interest which the receivers could have in so selling, except to get fees for themselves and their attorneys. We wish to condemn in no uncertain terms the practice of permitting the receiver to sell free of liens and without the consent of the lienors, under such circumstances.

The impropriety of ordering the sale free of liens in this particular instance appears to be the more egregious, because, so far as this record discloses, the District Court for the Southern district of New York had absolutely no jurisdiction of the subject-matter. The land was located in the Northern district of New York. The only conceivable basis for jurisdiction in the District Court for the Southern district is to be found in section 55 of the Judicial Code (Comp. St. § 1037 [28 USCA § 116]), and is limited to a case where part of the property is located in that district. There is no suggestion in the record that any of the defendant's property was located in the Southern district, and it would seem that the order of sale was void for lack of jurisdiction. See Primos Chemical Co. v. Fulton Steel Corp. (D. C.) 254 F. 454 (N. D. N. Y.); Equitable Trust Co. v. Washington-Idaho Water Co. (D. C.) 300 F. 601 (E. D. Wash.). Whether the District Court for the Northern district entered an order of sale does not appear.

[3] However, the appellant does not question the validity of the order of sale, but has chosen to pursue the proceeds. We are not disposed to throw him out of court on the theory that it does not affirmatively appear that the lien of his mortgage has been discharged. The record is not complete, and we shall assume in the remainder of this opinion that the District Court in some manner obtained lawful custody of the proceeds of sale, subject to the lien of the mortgage.

21 F.(2d)—27

If it did not, the remedies of the appellant would be very different. See Hawes v. First Nat. Bank, 229 F. 51, 59 (C. C. A. 8). Whether the court's order of sale had any validity whatever, and whether the mortgage trustee may be estopped by his pursuit of the proceeds, are, therefore, questions upon which we do not pass.

[4, 5] We come, then, to the distribution of the proceeds of sale. The order of sale transferred the mortgage lien to the proceeds, and they should have been ordered paid to the lienors, subject at most only to deduction of the actual expenses of preserving the property and creating the fund by sale. The fund may not be charged with general expenses of administering the estate. Ætna Life Ins. Co. v. Leonard, 186 F. 148 (C. C. A. 5); Gugel v. New Orleans Nat. Bank, 239 F. 676 (C. C. A. 5); In re Williams' Estate, 156 F. 934, 939 (C. C. A. 9); In re Utt, 105 F. 754 (C. C. A. 7). There is doubt whether even the expenses of the sale should be charged to the lienor if he did not consent to the sale. Ætna Life Ins. Co. v. Leonard, supra; In re Vulcan Foundry, etc., Co., 180 F. 671 (C. C. A. 3). Nor is it material that no general estate remains to compensate the receiver or the trustee in bankruptcy or their attorneys, where the fund realized is less than the amount of the valid incumbrance. In re Williams, supra; Smith v. Township of Au Gres, 150 F. 257, 9 L. R. A. (N. S.) 876 (C. C. A. 6); In re Cutler & John (D. C.) 228 F. 771 (E. D. N. C.). This is no hardship, for the sale should not have been asked unless there was a reasonable expectation that the general estate would be benefited.

[6-8] The procedure by which a lienholder should assert his claim to the fund is by filing an intervening petition. He may be ordered on reasonable notice to come in and assert his rights. In re T. A. McIntyre & Co., 176 F. 552 (C. C. A. 2); In re Lathrop, Haskins & Co., 223 F. 912 (C. C. A. 2). The general order obtained upon the appointment of receivers, directing creditors to file their claims within 90 days, was not such an order. It affected only creditors of the defendant, not claimants of a fund created long afterward. The refusal to allow Spence & Co., Inc., to file its claim as a general creditor adjudicated nothing with respect to the rights of the appellant, or of its rights to share in the fund held subject to the lien of the mortgage. See N. Y. Security & Trust Co. v. Lombard Inv. Co. (C. C.) 75 F. 172 (W. D. Mo.), cited by this court in Re Lathrop, Haskins & Co., supra. There was no bar of any sort to the lienor asserting his rights, unless

it be the order entered November 13, 1924, from which no appeal was taken.

That order makes no allusion to the lien of the Spence mortgage. It approved disbursements shown in the preliminary report of the receivers, which had apparently been filed either the day before or the same day as the order. It also authorized payments to the receivers, to attorneys, and to others who had rendered services to the receivers, which, if paid out of the fund subject to the Spence lien, would impair it by more than $10,000. No other fund was available. The receivers' report showed that they had collected some $88,000, of which about $51,000 was derived from the Booneville plant, and about $37,000 from the Pulaski plant and the feeding stations. The Booneville plant was subject to several incumbrances other than the Spence mortgage, and the order now under discussion recognized these liens and gave the lienors the entire proceeds. This left, as the only property remaining in the receivers' hands, the fund of $37,000, and this was subject to the Spence lien. While the order does not say from what source the receivers are to procure the money for the payments authorized by the order, it is apparent that the only source available is the Spence fund.

[9] The inequity of putting the entire expense of administration upon this fund is so obvious that we cannot understand upon what theory the order was entered. It should be allowed to stand only if the bondholders and their trustee, Spence, are estopped to question it. The order recites that "due notice of this hearing had been given to all mortgagees and bondholders under the trust mortgage herein." If proper notice was given to the bondholders and their trustee that it was proposed to divert their fund to improper uses, we do not see how the payments can now be attacked. The court had possession of the fund, and with possession went the power to disburse it, unlawfully as well as lawfully, provided the parties in interest were before the court. This could be accomplished by notice. If entered without notice to parties interested in the fund, an order allowing compensation for services or expenses of a receivership may be set aside at any time before the estate is closed. See Ruggles v. Patton, 143 F. 312 (C. C. A. 6); In re De Ran, 260 F. 732 (C. C. A. 6); In re Lahongrais, 5 F.(2d) 899 (C. C. A. 1).

[10, 11] At the date of the order of distribution of March 4, 1925, which is the order appealed from, there apparently still remained some $13,000 of the fund realized from the mortgaged property. From what has been said above, it is plain that that order was wrong, except in respect to ordering payment of the franchise taxes due to the state of New York. The franchise tax comes ahead of the mortgage, even though levied after the mortgagor had created the mortgage lien. See N. Y. Terminal v. Gaus, 204 N. Y. 512, 98 N. E. 11; In re Century Steel Co., 17 F.(2d) 78 (C. C. A. 2).

[12] It is urged that the mortgage trustee has not such an interest as entitles him to maintain this appeal, and that Fitkin v. Century Oil Co., 16 F.(2d) 22 (C. C. A. 2), so decides. That case held that the trustee was not a creditor, and could not prove the claims of mortgage bondholders who had not appeared for themselves. There the property had not been sold free of liens; the trustee was insisting upon the validity of the mortgage, and was attempting to prove a claim as creditor in order to protect bondholders in case there should be a deficiency after the security was realized. It was held merely that he was not a creditor. Accord: Brant, etc., Co. v. Palmer, 262 F. 370 (C. C. A. 8); In re U. S. Leatheroid Co., 285 F. 884 (D. C. Mass.). Compare Lane v. Equitable Trust Co., 262 F. 918 (C. C. A. 8). Here the trustee is not claiming as a creditor. He is asserting his lien upon the fund, claiming that he holds such lien in trust to secure all valid bonds, just as before the sale he held the mortgage lien upon the land. The distinction between asserting rights to his lien and claiming as a creditor is recognized by dictum in Mackay v. Macon Coal Co., 178 F. 881, 884 (C. C. A. 8). Doubtless the court may in its discretion distribute the fund directly to the bondholders, instead of turning it over to the mortgage trustee for distribution. United States Trust Co. v. Gordon, 216 F. 929 (C. C. A. 6); In re Chambersburg Silk Mfg. Co. (D. C.) 190 F. 411 (M. D. Pa.). But we see no reason why the trustee, when distribution is threatened, in utter disregard of the rights of bondholders, may not assert his lien to protect their rights. Neither the Fitkin Case nor any other authority which has come to our attention is adverse to this view.

[13] We are satisfied that the trustee is a proper party to bring to our notice the errors in the order appealed from. The terms of the trust mortgage do not appear, but the receivers have themselves recognized Spence as trustee, and the mortgage as creating a valid lien far in excess of the amount of the proceeds of sale. If some of the bondholders have failed to come in to claim a share in the fund, that is immaterial to the receivers. The share of the absent bondholders must be held

for them. Drascovich v. Equitable Trust Co., 3 F.(2d) 724 (C. C. A. 9); Brown v. Penn. Canal Co., 279 F. 417 (C. C. A. 3). We think the trustee may assert his lien to protect their interest, and may appeal from an order which disregards it.

[14–17] It is therefore necessary to reverse the order and remand the cause. It should be referred to a competent master. He should first ascertain whether the court has any jurisdiction of the subject-matter of the fund. We will not attempt on this record to direct what shall be done, if he finds that the court was without jurisdiction. If he finds in favor of jurisdiction, he should ascertain the amount of the lien upon the proceeds of sale of the premises mortgaged to Spence, and what items of expense are properly chargeable against this fund. Certain items of expense it may be proper to charge solely to the Booneville fund, or solely to the Spence fund, or to apportion between the two. He should then ascertain to what extent, if at all, payments authorized by the order of November 13, 1924, may be impeached. Any impeachable payments which have impaired the fund must be repaid. Any payments made under the order of March 4, 1925, except the payment of franchise taxes, are unauthorized, and must be repaid. The master should ascertain and report the extent of the impairment of the fund, and to whom unauthorized payments which are subject to recovery have been made. Such payees should be required to repay. The Spence fund, replenished by such repayments, should be distributed to the bondholders; but we think, under the circumstances, there should be deducted therefrom a reasonable fee to the trustee for his services in preserving the mortgage lien upon it.

The order is reversed, except in so far as it authorizes payment of the franchise taxes, and the cause is remanded for further proceedings in conformity with the foregoing.