CITY NATIONAL BANK OF DULUTH v. CASCADE
APARTMENT COMPANY AND OTHERS.
AMERICAN EXCHANGE NATIONAL BANK v. CASCADE
APARTMENT COMPANY AND OTHERS.
PITTSBURGH COAL COMPANY AND OTHERS,
INTERVENERS.[1]

February 21, 1930.

Nos. 27,464, 27,465.

[1]Reported in 229 N. W. 349.

*Harry W. Davis, John W. Swinland* and *Fletcher, Timerman & Vennum,* for appellants.

*Courtney & Courtney, Smythe & Lacy* and *Whipple & Atmore,* for interveners.

*McClearn & Gilbertson,* for City National Bank of Duluth and *J. E. MacGregor,* as receiver, respondents.

Holt, J.

A brief statement of the facts which give rise to this appeal is necessary.

The Cascade Apartment Company, a corporation, erected and undertook to operate a hotel in Duluth, Minnesota. To finance the project it executed three mortgages upon the property: a first mortgage of $125,000, a second mortgage of $60,000, and a third mortgage of $25,000. The furnishings were procured under a conditional sales contract from Boutell Brothers, and kitchen and dining room equipment under a like contract from E. F. Burg Company.

On June 24, 1925, in an action to foreclose the third mortgage, A. Nathan Cook and John W. Barton were appointed receivers and authorized to take immediate possession of the mortgaged premises and collect all income therefrom and apply the same in payment of taxes, interest on the first and second mortgages, insurance premiums, and for the upkeep and repair of the premises. Later, and on August 21, 1925, general creditors of the Cascade Apartment Company intervened, and on petition presented by the attorneys in the foreclosure action, Cook and Barton were appointed general receivers of all the property of the Cascade Apartment Company and authorized to administer its assets, conduct and continue its business and keep its property in good condition, "all, however, subject to the rights of the secured creditors of said Cascade Apartment Company." The order was made without prejudice to the rights and duties of Cook and Barton as receivers in the foreclosure action. On the same day the court approved a modification of the sales contract with Boutell Brothers in making the monthly pay-

ments $850 instead of $1,362, as specified in the contract. At that time over $27,000 remained unpaid, of which over $12,000 was in default.

On March 20, 1926, the City National Bank of Duluth, the trustee under the second mortgage, brought an action to foreclose the same, in which the Cascade Apartment Company, Cook and Barton as its receivers, the plaintiff in the third mortgage foreclosure action, the trustee of the first mortgage, and M. S. Cook were parties. A motion was made to appoint a receiver therein; Cook and Barton and the other appellants opposed such appointment. No action was taken by the court. In December, 1926, the motion was renewed, and it was made to appear that the holder of the bonds secured by the second mortgage had been compelled to pay over $12,000 past due interest and instalments on the first mortgage in order to prevent its foreclosure. The motion was finally granted on June 3, 1927, and John E. MacGregor was appointed receiver and qualified. On June 1, 1927, the holders of the second mortgage bonds had paid out for taxes, insurance premiums and amounts past due on the first mortgage something over $25,000. Cook and Barton had devoted none of the income to those items except paying the taxes for the year 1924 of about $4,000 and an instalment of $6,000 principal on the first mortgage. To make the last named payment the court authorized the receivers to issue and negotiate a certificate of indebtedness in the sum of $3,500; but they had made the monthly payments on the conditional sales contracts to Boutell Brothers and to E. F. Burg Company.

The time for redemption on the third foreclosure expired November 19, 1926. No redemption was made; but Cook and Barton continued in possession. They filed no account of their receivership in the foreclosure suit and none of their general receivership until December 2, 1927. At no time had they taken an inventory of the property that came into their possession as receivers nor of that which MacGregor received from them. MacGregor had possession from June 6, 1927, until November 6, 1927, when the time for redemption from the foreclosure of the second mortgage expired with-

out redemption being made, at which time Hugh J. McClearn, the holder of the sheriff's certificate of sale in that foreclosure, took possession of the premises, including the personal property therein. All the parties appeared at the hearing of the final account of Cook and Barton; and the hearing was continued from time to time.

Meanwhile MacGregor presented his final account as receiver, who insisted that there be no consolidation of the two matters, since he was not a successor to the Cook and Barton receivership but was receiver solely in the foreclosure of the second mortgage. However, as far as testimony taken in regard to either final account might be applicable to the other, the court received it. MacGregor, the respondent, is not interested in the account of Cook and Barton, and its allowance is not involved on this appeal; and although general creditors of the Cascade Apartment Company and those interveners who became creditors of Cook and Barton as receivers appeal from the allowance of the final account of Cook and Barton, no assignment of error relates to the allowance of that account. Cook and Barton, as receivers, appeal from the order allowing the account of MacGregor. In this they have the support of the interveners in the third mortgage foreclosure action and creditors who furnished supplies for the hotel when they operated as receivers, as well as the general creditors of the Cascade Apartment Company. As to all except Cook and Barton, the appeal is perhaps confined to the correctness of the order denying their belated motion to intervene in the action foreclosing the second mortgage. However, that is unimportant, since Cook and Barton represent their interests and receive for their benefit whatever MacGregor wrongfully let go elsewhere.

Complications have resulted from the fact that the court deemed it advisable to operate the hotel while the actions to foreclose the third and second mortgages were pending. The appellants Cook and Barton have also brought confusion because of failure separately to inventory the property which they took possession of when they became receivers. Nor did they inventory that which they turned over to MacGregor when he was appointed receiver. And even more have they wrought confusion by not promptly giving a

final account to the court when their duties ended as receivers in the third mortgage foreclosure action, and especially when their general receivership was closed by the court's order directing the property covered by the second mortgage, together with the business conducted thereon, to be turned over to MacGregor. The court appointed appellants receivers in the third mortgage foreclosure and also general receivers of the mortgagor. And although appellants and some general creditors opposed, the court subsequently appointed MacGregor as receiver in the action to foreclose the second mortgage. Whether this was proper or advisable is not now an open question. There was no appeal from the order, and the appointment of MacGregor as receiver must now by all concerned be considered lawful and proper.

When it came to consider the allowance of the final account of these receivers, the court took the view that MacGregor was accountable for all the personal property connected with the operation of the hotel, not covered by the Boutell and Burg contracts nor included in the real estate mortgages, which was left on the premises when McClearn took possession, and surcharged his account with the value thereof and directed that such value be paid over to Cook and Barton as general receivers. The court placed the burden upon MacGregor to point out this property, even though Cook and Barton were more remiss than MacGregor in matters of inventorying and accounting of the property so that accuracy could be attained. We see no good reason for disturbing the findings of the court as to the amount MacGregor's account should be surcharged for the property not covered by the mortgage or the two contracts McClearn purchased.

The court found that certain wall beds and electric stoves were part of the realty covered by the second mortgage and passed to McClearn by the foreclosure sale. In this the court did not err. Hanson v. Vose, 144 Minn. 264, 175 N. W. 113, 7 A. L. R. 1573, contains a full discussion of the law on this proposition and sustains the trial court's conclusion. No one had any claims against these beds, stoves, or electric light fixtures. They had been installed and

paid for apparently by the mortgagor before the first and second mortgages were given, and there was nothing to prevent the taking effect of the stipulation in the mortgages that this property should be a part of the real estate.

Cook and Barton were under their appointment directed to pay taxes, insurance premiums, and interest on prior mortgages from the income of the hotel business they were permitted to run. They failed in large part to do so, and MacGregor to certain extent did what Cook and Barton neglected. We think the court correctly adjusted the insurance premiums and likewise the tax payments. There might be some question about the payment of the first half of the tax for 1926, which had to be paid before June 1, 1927, to avoid a penalty. The foreclosure sale had taken place prior thereto, and when the premises were bid in the purchaser took the same subject to unpaid taxes, whether then delinquent or thereafter accruing and payable. But this receiver had been ordered to pay taxes, and if he obeyed his account should not be surcharged for so doing. It would seem only right that, having placed receivers in possession of the premises subject to a mortgage prior to the one being foreclosed, the court see to it that the taxes be paid so that the security of the prior mortgage be not impaired.

We shall not stop to discuss the claim that the court did not surcharge MacGregor's account sufficiently in respect to the cash on hand and bills receivable, nor on the $55.50 item designated "insufficient funds." The dispute seems more a matter of bookkeeping than a difference in substance. At least the record does not demonstrate that the court erred in any amount against appellants.

The chief item worth litigating is the so-called equity which the general receivers claim in the property covered by the Boutell Brothers and E. F. Burg Company conditional sales contracts. Upon these payments had been made so that when, in 1927, Hugh J. McClearn bought them from Boutell Brothers and E. F. Burg Company, there was unpaid in round numbers about $11,000 upon the two. The price originally fixed in the contracts was over $50,000. The proposition is advanced that MacGregor's account should be

surcharged with the value of this property less the amounts unpaid thereon. There is also some claim that McClearn's purchase was such a violation of fiduciary duty, he being MacGregor's attorney, that not only should the purchase be held void but because thereof all fees to the attorney and receiver should be denied.

MacGregor as receiver in the foreclosure action was independent of Cook and Barton as general receivers. The latter fought the appointment of the former. The proceedings were separate. They were never consolidated. MacGregor was not appointed successor of Cook and Barton, nor was he appointed general receiver of the Cascade Apartment Company. As receiver in the foreclosure action he was permitted to conduct the business carried on upon the premises, evidently so as to preserve the property as a going hotel in order not to impair the security. In carrying on the business all bills incurred were paid. He refused to pay the bills Cook and Barton incurred as receivers. In that situation McClearn as attorney for MacGregor stood in no fiduciary relation to Cook and Barton. But even if it should be so considered, MacGregor had no control over McClearn and could not hinder him from contracting as he saw fit with Boutell Brothers and E. F. Burg Company. McClearn was not a party to the second mortgage foreclosure action in which this final account of MacGregor is up for allowance. If peradventure the general creditors of the Cascade Apartment Company, or of its receivers, have any equity, title, or pecuniary interest in or to any of the property that came into Mr. McClearn's possession, the appropriate remedy is an action or proceeding against him personally, and the court authorized Cook and Barton to bring such action.

Counsel has argued so earnestly some propositions which we do not consider involved on this appeal that some notice should be taken thereof. One is that the court having authorized Cook and Barton as general receivers to operate the hotel, the debts contracted in such operation are debts incurred by the court and should have preference. The short answer is that the receivers did not obtain the court's permission to contract debts. The court was not advised

that they were operating at a loss. The issuance of but one receiver's certificate of indebtedness for $3,500 was petitioned for, the payment of which the court has directed. MacGregor's receivership was separate from that of Cook and Barton, both as general receivers and receivers in the third mortgage foreclosure. The action in which MacGregor was appointed represented rights superior to those represented by Cook and Barton. The latter had no right to contract debts in running the hotel or in the conduct of their receivership and make that a charge against the estate or interest of the second mortgage or the receiver in its foreclosure. Sibley County Bank v. Crescent Milling Co. 161 Minn. 360, 201 N. W. 618, justified the court in refusing to recognize the claims which Cook and Barton, as general receivers, had incurred in their administration as entitled to a preference over the fees of MacGregor and his attorney, payable out of the funds derived during his five months' operation of the hotel. ·

"Mortgagees of part of an insolvent corporation's property are not chargeable with part of the expenses of a receivership, which they did not seek, and which appears to have been conducted in the interest of unsecured creditors" and inferior lien claimants, is the syllabus in Aetna Life Ins. Co. v. Leonard (C. C. A.) 186 F. 148.

The language is peculiarly appropriate here where it is quite clear from the record that a general receivership was sought, and the receivership in the second mortgage foreclosure suit was fought so that an "estate" might be created for the general creditors by accumulating enough in the operation of the hotel to pay up the Boutell Brothers and E. F. Burg Company contracts, and possibly obtaining more time in which those interested in the third mortgage might realize something if their equity could be disposed of for some consideration before the year of redemption expired. In line with the last cited case are International Tr. Co. v. United Coal Co. 27 Colo. 246, 60 P. 621, 83 A. S. R. 59; Stevens v. Evening Courier, 31 Idaho, 710, 175 P. 964.

The memoranda of the learned trial court are illuminating upon the question under discussion and others bearing on this appeal,

and we give therefrom two extracts. As the reason for appointing MacGregor on June 3, 1927, the court says:

"Taxes, insurance premiums, interest and installments on incumbrances on the premises in question are unpaid. Practically no money is available for upkeep. The receipts are insufficient to make these payments. The main reason the receipts are insufficient to make these payments is that $800 [$850] a month is being paid on the furniture. The result is that the holders of the second mortgage bonds are steadily being placed in a worse position through the depreciation of their security while an estate which did not exist at the time of insolvency is being created for the general creditors through the use of the premises. There was practically no estate of the general creditors at the time receivers were appointed. The situation as it exists is plainly inequitable, and the court should take some action to try to remedy it, even though complications may follow."

And from the one attached to the order allowing MacGregor's account:

"After too long a delay, as it is evident now, the court appointed MacGregor receiver in connection with the foreclosure of the second mortgage, and ordered Barton and Cook, receivers then in possession, to turn over the premises to the new receiver. The relation between the two sets of receivers was antagonistic. The first receivers were using the premises to create an estate for their receivership, and in so doing were greatly diminishing the security of the second mortgage bondholders. The second receiver, MacGregor, was not interested in the general creditors of the corporation, nor the third mortgage bondholders, but in using the premises so as not to diminish the security. The new appointment was not intended as a continuation of the old receivership, nor did it so continue it in fact. * * * The court knew nothing of the indebtedness growing out of the operation of the hotel until after the possession of the premises had been turned over to the new receiver. * * * H. J. McClearn, an attorney, who was the holder of a majority of

the second mortgage bonds, and who had foreclosed the second mortgage, purchased the Burg and the Boutell contracts at about the same time that the change in receivership was made. It is evident he purchased the same in order to protect the financial interest he had in the property. McClearn as a bondholder, representing himself and other bondholders, petitioned the court for the appointment of a receiver in connection with the foreclosure of the second mortgage. * * * He insisted that the second mortgage bondholders were entitled to have their security protected. Barton and Cook, the first receivers, and their creditors, insist that McClearn is not entitled to the furniture and equipment in question, that, as attorney for the second receiver, MacGregor, he could not legally purchase or foreclose the contracts. In the findings heretofore filed in this matter [allowing the account of Cook and Barton] authority was given to the receivers, Barton and Cook, to bring action against McClearn, if so advised, to determine whether or not McClearn had legally acquired title to the furniture and the other personal property. They, however, insist that the court take summary action, which the court has refused to do."

In the view the court below took, and which this court also takes, there was no error in refusing to receive evidence as to the value of the property covered by the Boutell Brothers' and E. F. Burg Company's conditional sales contracts.

The orders appealed from are affirmed.