**In re TRESSLAR.**

District Court, M. D. Alabama, N. D., at Montgomery. July 7, 1927.

No. 5661.

1. Bankruptcy ⟷188(1)—"Bankrupt estate," consists of property of bankrupt diminished by valid liens.

A "bankrupt estate," to be administered by the court of bankruptcy, consists of the property of bankrupt coming into the hands of his trustee, diminished by all valid liens, whether created by contract or statute.

2. Bankruptcy ⟷346—Taxes, made a lien by state law, are payable before claims for wages (Bankruptcy Act, § 64b, as amended by Act May 27, 1926 [44 Stat. 666]; Revenue Act Ala. 1919, § 416).

Under Bankruptcy Act, § 64b, as amended by Act May 27, 1926 (44 Stat. 666), claims for wages are not entitled to priority of payment over taxes due the state, county and municipality, where by the law of the state, as by Revenue Act Ala. 1919, § 416 (Laws 1919, p. 449), such taxes are made a lien on all property of the taxpayer from date of assessment.

3. Bankruptcy ⟷357—State law determines status of bankruptcy estate after questions of title are settled.

After questions of title are settled, status of bankruptcy estate remaining is determined by law of state.

In Bankruptcy. In the matter of H. P. Tresslar, bankrupt. On review of findings and order of referee in regard to wage claims of Miss Mabel Farrior and H. P. Tresslar, Jr., and petitions of the State of Alabama, the County of Montgomery, and the City of Montgomery for taxes. Decree in conformity with referee's findings.

Steiner, Crum & Weil, of Montgomery, Ala., for petitioners for review.

A. A. Evans, Asst. Atty. Gen. (Charlie C. McCall, Atty. Gen., on the briefs), for the state of Alabama and Montgomery county.

Sternfeld & Lobman, of Montgomery, Ala., for city of Montgomery.

CLAYTON, District Judge. [1] The entire amount of the assets of the bankrupt estate now in the hands of the court are $759.62. The payment of the preferred claims will leave nothing for the general creditors.

Farrior claims $345 for wages as clerk of the bankrupt, $260 of which was earned within three months preceding the filing of the original petition in bankruptcy. Tresslar, Jr., claims $420 for wages, $260 of which was earned within three months before the bankruptcy proceedings were begun.

The state of Alabama claims $41.47 for taxes; the county of Montgomery claims $86.83, and the city of Montgomery, where the bankrupt carried on his mercantile business, claims $496.25 for taxes—all of which taxes were due before and at the time the voluntary bankruptcy proceedings were instituted.

The wages claimants insist that the amendment to the Bankruptcy Law, approved May 27, 1926, made effective three months after its approval, in subdivisions (a) and (b) of section 64 of the Bankruptcy Act as amended (44 Stat. 666), provides for priority of payment of such claims over those for taxes. And it is contended that by this amendment the order of priority fixed in subdivision (b) arranges wage claims under the fifth subdivision ahead of taxes, which appears under subdivision 6. And it is insisted that this change in the law makes the payment of taxes specifically subordinate to the payment of wage claims and other debts mentioned in subdivision (b). Also the wages claimants contend that the amendment referred to above was to meet the decision of

the Supreme Court of the United States in Oliver, Trustee, v. U. S. of A., 268 U. S. 1, 45 S. Ct. 386, 69 L. Ed. 817.

It is argued that, in the absence of express statement, in the Bankruptcy Law, the court would consider that Congress intended that the taxes should be paid first, and that the change in the law giving the payment of taxes a fixed relative position subordinate to that of wages was a direct expression of Congress on the subject to meet the ruling in the Oliver Case, and in the brief for Farrior and Tresslar, Jr., these words are quoted from the opinion in that case: "We adhere to this as a correct statement of the general rule to be followed whenever it *does not clearly appear that the particular tax has been subordinated to claims for wages by some relevant law."* (Italics supplied.) Other cases are cited, among them Davis v. Pringle, 268 U. S. 315, 45 S. Ct. 549, 69 L. Ed. 974, and Guarantee Title & Trust Co. v. Title Guaranty & S. Co., 224 U. S. 152, 32 S. Ct. 457, 56 L. Ed. 706.

[2] The state, county, and city rely upon the Alabama statute (see margin hereof) [1] which it is insisted fixes a lien for taxes superior to the lien or claim for wages, and the familiar doctrine is urged that the trustee in bankruptcy took the property of the bankrupt estate subject to all valid liens. It is

urged that the Act of Congress of May 27, 1926, in no way affects the rights of valid lienholders. It does not seem to me that Congress by the amended Act of May 27, 1926, intended to destroy liens such as created by mortgages and the like, and by the same token it does not seem that Congress intended to, if indeed Congress could do so, destroy the lien for taxes created by the Alabama statute.

It is to be observed that subdivision (b) of the amended section 64 of the Bankruptcy Act begins with the words: "The debts to have priority, in advance of the payment of dividends to creditors (except as herein provided) and to be paid in full out of bankrupt estates, and the order of payment shall be," etc. And it is plain that the amended section provides for the payment in full of certain debts out of the *bankrupt's estate* "in advance of the payment of dividends to creditors." Such prior claims must be paid "out of the bankrupt's estate." As a proposition of law, I think that a valid lien, whether created by contract or by statute, upon the goods, wares, and merchandise in the hands of the trustee, reduces the estate of the bankrupt to the extent of the amount of the debt secured by the lien. The priority provided in subsection 6 of section 64 of the Bankruptcy Act does not interfere with the disposition of money or property that does not belong to the bankrupt's estate. It simply directs the administration of the money belonging to the bankrupt's estate, and nothing more. It is the estate of the bankrupt which is administered, and what constitutes the estate is governed by the laws of the state.

[3] After all questions of title and fraud and the like have been settled in accordance with the Bankruptcy Act and the law of the state, the status of the estate remaining is determined by the law of the state. As to creditors, this estate must be administered in the manner provided by the Bankruptcy Act. In any given case the estate may be reduced by the amount of bona fide claims secured by valid liens on the personal property in the hands of the trustee, where such personal property is of greater value than the claims. The residue of the value of such property belongs to the bankrupt estate. The District Court is empowered to have the property sold under its direction, pay to the lienholder the amount of his debt, and place the residue in the funds of the estate of the bankrupt as a part thereof, and have it administered as provided by the Bankruptcy Act. In case any taxes are due which are not secured by lien, then such taxes would be paid out of the

[1] Section 416 of the Revenue Act of Alabama of 1919 (Laws 1919, p. 449), reads as follows:

"From and after the first day of October of each year, when property becomes assessable the State shall have a lien upon each and every piece or parcel of property owned by any taxpayer for the payment of all taxes which may be assessed against him and upon each piece and parcel of property real or personal assessed to owner unknown, which lien shall continue until such taxes are paid, and the county shall have a like lien thereon for the payment of the taxes which may be assessed by it; and if such property is within the limits of a municipal corporation, such municipal corporation shall have a like lien thereon for the payment of the taxes which may be assessed by it. These liens shall be superior to all other liens and shall exist in the order named and each of said liens may be enforced and foreclosed by sale for taxes as provided in this act, or as other liens upon property are enforced."

Section 2172 of the Code of 1923 reads as follows:

"On all property, both real and personal, used in any exhibition, trade, business, vocation, occupation, or profession, for which a license is or may be required, municipal corporations shall have a lien for such license, which lien shall attach as of the date the license is due and shall be superior to all other liens, except the lien of the state, county and municipal corporations for taxes, and the lien of the state and county for license. Such lien may be enforced by attachment or in equity."

bankrupt estate after "wages due to workmen, clerks, traveling or city salesmen, or servants, which have been earned within three months before the date of the commencement of the proceeding, not to exceed $600 to each claimant."

Probably there is a distinction between a lien on the goods, wares, and merchandise in the hands of the trustee in bankruptcy and a mortgage on real estate. But in no case will the District Court interfere with a lienholder further than is necessary to protect the interest of the estate of the bankrupt. The real estate is visible and fixed, and cannot be easily dissipated. The interest of the bankrupt in real estate will be sold subject to lien, the lienholder's interest is in no way jeopardized by the sale.

In reference to the lien upon the goods, wares, and merchandise in the hands of the trustee, all interests are there best subserved by selling the goods free from lien and letting the proceeds of the sale, reduced to money, take the place of goods, wares and merchandise. The money paid takes the place of the goods, etc., in the hands of the trustee, and the court will protect all interests. In the case of goods, wares, and merchandise in the hands of the trustee in bankruptcy, the court will not permit the tax collector to levy upon and take possession of such property under a lien of the state and sell it for taxes, as it would have the right to do if the property were not in the hands of the trustee; nor will the court allow the trustee to defeat the lien of the estate by selling and delivering the property to a third person.

It is settled law that, after the bankruptcy petition has been filed, the property of the bankrupt in possession of adverse claimants is in the legal custody and exclusive control of the court of bankruptcy. In every case the court will protect all interests in selling the goods, wares, and merchandise and converting them into money, and pay to any valid lienholder the money belonging to him, and then distribute the balance of the estate as provided by the Bankruptcy Act.

The testimony and the law of this case have been carefully considered. There was practically no dispute about the facts. They are as the referee found them to be. He held that the lien and claim of the state, county, and city for taxes were superior to the lien and claim of Farrior and Tresslar, Jr., for wages as clerks. In my opinion his conclusion was correct. Therefore an order and decree will be entered, approving and confirming the order of the referee made in this matter, in respect to the claims of Farrior and Tresslar, Jr., for wages, and decreeing the payment of the claims of the state of Alabama, the county of Montgomery, and the city of Montgomery for taxes, after the payment of all costs of administration. And it will be further decreed that, after the payment of all costs of administration of the estate and such taxes, the balance of the money in the hands of the trustee, if any, will be equally divided between clerk Farrior and clerk Tresslar, Jr., each of whom has a valid claim for $260 earned within three months before the bankruptcy proceedings were begun.