## CASSIDY SOUTHWESTERN COMMISSION CO v. DUVAL COUNTY et al. (No. 895—4525.)

Commission of Appeals of Texas, Section B. March 7, 1928.

1. Taxation ⬿509—Statute providing for lien held inapplicable to case involving lien for taxes claimed by county on mortgaged cattle (Rev. St. 1925, art. 7269).

Provision for lien under Rev. St. 1925, art. 7269 (Rev. St. 1911, art. 7627), *held* wholly inapplicable to case wherein county claimed lien on cattle for taxes on cattle which had been mortgaged to another who had taken possession before county proceeded to attempt to exercise lien rights and sell the cattle for tax payment.

2. Taxation ⬿581—Prescribed manner of imposing and satisfying tax lien is negation of other modes (Rev. St. 1925, art. 7268.)

The prescribed mode provided by Rev. St. 1911, art. 7626 (Rev. St. 1925, § 7268), for imposing and satisfying liens for taxes, is a negation of other modes of tax collectors satisfying such lien.

3. Taxation ⬿509—Lien held not fixed on cattle left in county as security for taxes, where no attempt was made by county to sell before mortgagee took possession under mortgage (Rev. St. 1925, arts. 7266–7269; Const. art. 8, § 15).

Where owner of 750 cattle left 50 of them in county as security for unpaid taxes on being permitted to remove the other 700, but, before any attempt was made to sell such cattle, a mortgagee took possession of them under his

mortgage, *held*, in view of Const. art. 8, § 15, that mortgagee's rights were the superior, as no lien had been fixed on the 50 head of cattle to secure tax payment, since steps therefor had not been taken pursuant to Rev. St. 1925, arts. 7266–7269 (Rev. St. 1911, arts. 7624–7627).

**4. Liens ⬥⟹5—A lien cannot be established in invitum as against third party in nonstatutory way.**

A lien cannot be established in invitum as against a third party in a nonstatutory way.

**5. Taxation ⬥⟹542—Mortgagee's payment of back taxes on cattle taken under mortgage held recoverable, where made under protest, without tax lien having been fixed before mortgagee took possession under mortgage (Rev. St. 1925, art. 7268; Const. art. 8, § 15).**

Where mortgagee, under protest, paid back taxes to county for 750 cattle, 700 of which mortgagor had removed from county, on agreement with tax collector to leave 50 head as security for tax payment, *held*, under Const. art. 8, § 15, and in view of Rev. St. 1925, art. 7272, that such tax payment was recoverable where mortgagee took possession under mortgage before tax lien was fixed by officer's pursuing mode of seizing and selling, as provided by Rev. St. 1925, art. 7268 (Rev. St. 1911, art. 7626).

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by the Cassidy Southwestern Commission Company against the County of Duval and others. A judgment of the district court for defendants was affirmed by the Court of Civil Appeals (276 S. W. 745), and plaintiff brings error. Judgments of the district court and of the Court of Civil Appeals both reversed, and judgment rendered for plaintiff.

Perkins & Floyd, of Alice, for plaintiff in error.

J. F. Clarkson, of San Diego, for defendants in error.

SHORT, P. J. This case was originally referred by the Supreme Court to section A, and through Judge Nickels that section handed down an opinion therein, which was not adopted by the Supreme Court, and the case was afterwards referred to this branch of the commission. We have examined the record, and have reached the same conclusion which was reached by section A, as expressed in the opinion of Judge Nickels, upon the language of which we feel ourselves unable to improve. It is as follows:

"During the year of 1922 H. C. Storey owned 750 steers in Duval county. For that year taxes amounting in the aggregate to the sum of $369.16 were duly assessed and levied against Storey by reason of his ownership of the steers. Prior to November 1, 1922, Storey removed 700 of the steers from the county. He left 50 steers in the county under and be-cause of an arrangement with the tax collector whereby the same were to be held there as security for the taxes thus assessed and levied on account of the entire herd. The tax collector at that time did not levy upon any of the stock, and did not undertake to sell same 'for taxes.' See article 7268, R. S. 1925.

"Cassidy Southwestern Commission Company, a creditor of Storey, held a chattel mortgage lien upon all of the cattle, and it was in existence during the period intervening November 20, 1920, and June 9, 1923. June 9, 1923, and under authority of its mortgage contract, the commission company took possession of the 50 steers then in Duval county, and undertook to ship them away from the county and to market. Thereupon the tax collector levied upon and seized the cattle, and proposed to hold and sell them 'for taxes' accrued against Storey in respect to the herd of 750 head and then (with penalties and interest) amounting to $527.35, although the commission company tendered payment of the same 'due for the year 1922 upon said 50 head'; i. e., a 50/750 part of the total claimed. It then paid the entire amount claimed, but the payment was made 'under protest,' and its rights duly preserved. This suit was brought for the purpose of recovering the alleged excess of payment. Judgment went for the defendants, and the judgment was affirmed by the honorable Court of Civil Appeals, 276 S. W. 745.

"The bases of the affirmance are: (1) The arrangement between Storey and the tax collector was a compliance 'in spirit and purpose' with the requirements of article 7626, R. S. 1911 (article 7268, R. S. 1925), leaving 50 steers in the county under the arrangement being 'to all intents a valid bond for the taxes under the statute cited.' (2) The county had a first lien on the cattle in virtue of the terms of article 7627, R. S. 1911 (article 7269, R. S. 1925). In support of the second proposition, Mission Independent School District v. Armstrong (Tex. Com. App.) 222 S. W. 201, is cited.

"In the terms of article 7624, R. S. 1911 (article 7266, R. S. 1925) the tax collector is required to 'seize and levy upon and sell * * * personal property belonging' to a person who shall have failed or refused 'to pay the taxes imposed upon him or his property' within the time allowed for payment. Sufficient 'personal property' is thus to be seized, etc., to satisfy the amount of taxes and costs. According to article 7625, R. S. 1911 (article 7267, R. S. 1925), the property owner may point out 'sufficient personal property' to 'pay all taxes assessed,' and, if he does so, the tax collector must 'levy upon and sell such property.'

"In article 7626, R. S. 1911 (article 7268, R. S. 1925) it is provided that, if the tax collector shall learn that 'any personal property assessed for taxes on the rolls is about to be removed from the county, and the owner of such property has not other property in the county sufficient to satisfy all assessments against him,' 'shall immediately levy upon a sufficiency of such property to satisfy such taxes and costs, and the same sell,' etc., 'unless the owner of such property shall give bond * * * conditioned for the payment of the taxes due on such property on or before the first day of January next succeeding.'

---

⬥⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] "The provisions of article 7627, R. S. 1911 (article 7269, R. S. 1925) providing for a lien in certain instances, as explained in Mission Independent School District v. Armstrong, supra, are wholly inapplicable in such a case as is now presented; hence that article may be laid to one side.

[2-4] "At least as against third persons interested, the terms of article 7626, R. S. 1911, afford the measure of the tax collector's authority. That law was made for his guidance, and not for his amendment of it, and its provisions mark out the grant of such authority as he may have to provide security for the county in a case of discovered threatened removal such as is there defined. His authority is to 'levy upon' certain property 'and the same sell,' unless the owner makes a satisfactory bond. There is not expressed or implied in the language authority to do something else. The tax collector is vested with power to do a certain thing in a certain way; and the prescribed manner is a negation of other modes. Foster v. City of Waco, 113 Tex. 352, 255 S. W. 1104. In the present case, upon discovery of the threat of removal, he did not levy and he did not propose to sell; he merely agreed that Storey might leave 50 head of cattle in the county as security for taxes assessed in respect to the entire herd. By this arrangement Storey escaped payment of the taxes which he owed and escaped, also making the bond, which, if made, would have imposed its burdens upon him and his sureties, instead of leaving the burden to fall upon the mortgagee. Upon the facts, the mortgagee was not in any way a party to, or cognizant of, the arrangement made by Storey and the tax collector, yet, it may be, its rights were substantially impaired by the collector's failure to pursue the statutory method. If Storey were the complaining party, a different question would be presented; but where, as here, the complainant is a stranger to the agreement, it must be held that no lien was fixed upon the 50 head of cattle to secure payment of the taxes accrued by reason of Storey's ownership of the 750 head. If the method prescribed by law had been employed, the result would have been such a lien or a lawful substitute for it in the form of a bond; but a lien cannot be established, in invitum, as against a third party in a nonstatutory way. The tax collector, or the county, or other officers, therefore, had no lawful right to demand payment of those taxes and costs as a condition of allowing removal of the fifty head of cattle by reason of anything expressed or implied in article 7626, R. S. 1911.

[5] "Nor did they have a right to demand payment of taxes accrued for back years by reason of Storey's ownership of the cattle in virtue of the terms of articles 7624 and 7625, R. S. 1911. For the levy upon and seizure of those cattle were not made by the tax collector until subsequent to the time when Cassidy Southwestern Commission Company became their owner. The facts show a levy upon property belonging to one person to satisfy taxes due by and assessed against another, whereas the levies and seizures authorized in those articles have relation to 'personal property belonging to such person as may be sufficient to pay his taxes.' Nothing comparable to a lien upon personal property, except upon levy, seizure, etc., in the manner prescribed, is provided to secure payment of state or county taxes, save in the special case described in article 7627, R. S. 1911. Storey's possible escapement of the burdens assessed against him does not justify holding another liable therefor.

"The payments made by the commission company were therefore involuntary, and because of that fact the company is entitled to the relief prayed. Galveston County v. Gorham, 49 Tex. 279."

As indicated by Judge Nickels, we do not think it necessary to attempt to reconcile the opinion which we have approved with that of Mission Independent School District v. Armstrong (Tex. Com. App.) 222 S. W. 201. It may be that that case could be distinguished from this. However that may be, we think that our views are expressly supported by section 15, art. 8, of the Constitution. That section is as follows:

"The annual assessment made upon landed property shall be a special lien thereon; and all property, both real and personal, belonging to any delinquent taxpayer shall be liable to seizure and sale for the payment of all the taxes and penalties due by such delinquent; and such property may be sold for the payment of the taxes and penalties due by such delinquent, under such regulations as the Legislature may provide."

The Legislature has provided such regulations, some of which have been cited in the opinion we have adopted. See, also, article 7272, R. S. 1925. It will be noticed that the Constitution fixes a special lien upon landed property by the annual assessment made thereon. No such lien is fixed upon personal property in that manner, but the inference is clear that personal property belonging to any delinquent taxpayer shall have a lien fixed thereon to secure the payment of taxes and penalties due by such delinquent taxpayer by seizure and sale in a manner provided by law. At the time the 50 steers were seized, the ownership thereof, as well as of the remaining 700, no longer remained with the delinquent taxpayer, and, at the time of the seizure of the 50 steers, a lien was fixed on them, the effect of which was to make those particular steers responsible only for the taxes which the plaintiff in error voluntarily paid.

In the language of the opinion of section A, we "recommend that the judgments of the district court and of the Court of Civil Appeals be reversed, and that judgment be rendered in favor of Cassidy Southwestern Commission Company, plaintiff in error, and against the defendants in error, for the sum of $527.35, together with interest thereon at the rate of 6 per centum per annum from June 9, 1923, and costs."

CURETON, C. J. The judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.