## In re BRANNON et al.

### Nos. 3095, 3102, 3089.

District Court, N. D. Texas, Dallas Division. Nov. 4, 1931.

George K. Holland, R. G. Scurry, H. P. Kucera, and Tom C. Clark, all of Dallas, Tex., for landlords and tax collectors.

George T. Sergeant and W. N. Coombes, both of Dallas, Tex., for wage claimants.

ATWELL, District Judge.

Bankrupt estates 3905, 3102, and 3089 present the same question. In each the amount realized by the trustee is insufficient to pay wage claims, state, county and city taxes, and, landlord's lien claims. The referee ruled that wage claims should be paid first, and that the remainder, if any, should be prorated on taxes, and then on landlord's liens.

Most of the authorities cited by each side date prior to the 1926 amendment to the Bankruptcy Act. That amendment settled the disputes that had been urged by bench and bar as to the order in which priority groups should be paid. The Congress was aware of the prevailing trend of the decisions of the courts as is particularly indicated by its definition of the word "person" in subdivision 7, which was wholly different from what the Supreme Court had held in Davis v. Pringle (Borland v. United States), 268 U. S. 315, 45 S. Ct. 549, 69 L. Ed. 974.

When legislation takes place in the face of notorious assertions of different constructions of existing statutes, the courts are quick to discover the change and the reason therefor. The Congress, in the amendment to section 64 (11 USCA § 104), dealt with debts which are entitled to priority in payment. It evidently had in mind the relief of general creditors and the penalizing of governments —both state and national—which had been slothful in tax claims, and, it may be added, greedy.

It is possible that the changes do not benefit, very materially, the position of general creditors, but the changes do go a long way toward a definite settlement of muchly discussed questions that related to the order of payment.

Subdivisions a and b of section 64 are now as follows:

"(a) The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, State, county, district, or municipality [in advance of the payment of dividends to creditors, and], in the order of priority as set forth in paragraph (b) hereof: Provided, that no order shall be made for the payment of a tax assessed against real estate of a bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court. Upon filing the receipts of the proper public officers for such payments the trustee [he] shall be credited with the amounts thereof, and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court.

"(b) The debts to have priority, in advance of the payment of dividends to creditors [except as herein provided], and to be paid in full out of bankrupt estates, and the order of payment shall be (1) the actual and necessary cost of preserving the estate subsequent to filing the petition; (2) the filing fees paid by creditors in involuntary cases, and, where property of the bankrupt, trans-

ferred or concealed by him either before or after the filing of the petition, shall have been recovered for the benefit of the estate of the bankrupt by the efforts and at the expense of one or more creditors, the reasonable expense of such recovery; (3) the cost of administration, including the fees and mileage payable to witnesses as now or hereafter provided by the laws of the United States, and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases while performing the duties herein prescribed [to the bankrupt in involuntary cases while performing the duties herein prescribed], and to the bankrupt in voluntary and involuntary cases, as the court may allow; (4) where the confirmation of composition terms has been refused or set aside upon the objection and through the efforts and at the expense of one or more creditors, in the discretion of the court, the reasonable expenses of such creditors in opposing such composition; (5) wages due to workmen, clerks, traveling or city salesmen, or servants, which have been earned within three months before the date of the commencement of the proceeding, not to exceed $600 [$300] to each claimant; (6) taxes payable under paragraph (a) hereof and (7) debts owing to any person who by the laws of the States or the United States is entitled to priority: Provided, that the term 'person' as used in this section shall include corporations, the United States and the several States and territories of the United States."

There are decisions which hold that taxes should be paid before wages.

Running through most of the decisions is a joint reference to sections 64 and 67 (11 USCA §§ 104, 107). Each of these sections is unambiguous. Neither needs to be interpreted or construed. It is the duty of the courts, if it may be done without unwholesome results, to harmonize them if they be in conflict.

By applying section 67 to such liens as it specifically mentions, and section 64 to such things as it deals with, conflict is avoided.

It robs section 64 of its vitality, and makes the birth of the 1926 amendment useless to view it as a mere classification.

█ The constitutional provisions giving the Congress power to deal with bankruptcies is strong enough to make its directions as to the use of funds that arise in bankruptcy paramount and free from any collision with the sovereign power of the other governments. "It is idle to consider whether a state law can of its own force determine priority under a national bankrupt law." In re Bennett (C. C. A. 6) 153 F. 673, 674.

Section 67d (11 USCA § 107(d) provides that: "Liens given or accepted in good faith and not in contemplation of or in fraud upon the provisions of this title, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall to the extent of such present consideration only, not be affected by anything herein."

█ Manifestly, this language relates to liens that have been voluntarily given, such as mortgages and the like. True, many of the decisions use this section as vitalizing and preserving taxes and landlord's liens.

Those liens really arise involuntarily. They are a creature of the law, and exist without any contractual relation or act between the debtor and creditor. It is a fact that both the taxing authorities and the landlord may, in most jurisdictions, ripen liens by doing additional things, but mere holding of property determines the birth of the tax on such property, while the landlord's lien arises from the use of his property under some contract out of a statute. There is no reason why Congress may not in its wisdom prefer the wage-earner to either the landlord or the government. While the court is not always concerned with reasons for legislation, it may be that the Congress thought it more important that the wage-earner receive pay than that either the nation or the state or the city receive its taxes. See, 1926, 69 Cong. Rec. 7527, page 15, Colin Analysis 1926 Amendment. It cannot be denied that that is what Congress has said. It cannot be denied that, if such a construction be placed upon the two sections, ambiguity and disagreements disappear, and in their place we find clearness.

Cases that seem to support this view are: Oliver v. United States, 268 U. S. 1, 45 S. Ct. 386, 69 L. Ed. 817; Manly v. Hood (C. C. A.) 37 F.(2d) 212; Cameron & Co. v. Goodwin, 239 F. 128 (C. C. A. 5); City of Dallas v. Menezes (C. C. A.) 16 F.(2d) 779; Guarantee Title & Trust Co. v. Title Guaranty & Surety Co., 224 U. S. 152, 32 S. Ct. 457, 56 L. Ed. 706; Collier and Remington on Bankruptcy.

There are a few cases, notably, In re Tresslar (D. C.) 20 F.(2d) 663, Shalet v. Klauder (C. C. A.) 34 F.(2d) 594, and In re Cardwell (D. C.) 52 F.(2d) 158, 18 A. B. R.

404

(N. S.) 207, which seem to take the view that under section 67d, as it now is, taxes are supported by liens, and shall be paid prior to wages.

The case of Richmond v. Bird, 249 U. S. 174, 39 S. Ct. 186, 63 L. Ed. 543, while not with reference to wages, would seem to support such a view, but the Supreme Court in the later case of Oliver v. United States, 268 U. S. 1, 45 S. Ct. 386, 387, 69 L. Ed. 817, qualified it by saying that: "Of course, this opinion must be read in the light of the question under consideration. * * * We did not undertake to decide in what order, as among themselves, taxes and the debts specified by section 64 should be satisfied; that point was not presented." It was also in the Oliver Case that the court said, in substance, that taxes were entitled to priority of payment over claims for wages whenever it does not clearly appear that the particular tax has been subordinated to claims for wages by some "relevant" law.

It would seem that there is no more relevant law than an act by Congress which deals directly with taxes and the duty of the trustee with reference thereto, and which deals directly with debts that shall have priority and the duty of the same officer concerning such debts, and which provides the steps that such officer shall take in liquidation. The trustee is directed, in the act, to pay, first, the actual and necessary cost of preserving the estate; second, filing fees, etc.; third, cost of administration, including certain fees; fourth, reasonable expenses arising out of attempts at compensation; fifth, wages; sixth, taxes; seventh, debts which are entitled to priority under the laws of the state and nation.

The practicability of this construction of the two sections is of great importance. Those liens which are harvested in their fullness under section 67d are not in the slightest disturbed by the priorities of section 64. Section 64 deals with the funds that are not already impressed by the voluntary contracts of the bankrupt.

 Such general fund as is accumulated by the estate in bankruptcy, and that is not subject to liens by reason of contracts, may be distributed only in the order named. To that extent section 64 impresses upon such funds a direction for the benefit of those therein mentioned and in the order therein specified. It is a wholly practical lien creating statute for such debts as are not protected by section 67d. Any legislation, even by Congress,

that would have resulted in an impairment of individual contracts or rights, would be void, and section 67d merely recognized what the parties themselves had already created. Taxes are junior to wages. The wage impression is superior.

The contest between the tax collectors and the landlords is simplified in the present situations because the tax upon personal property in Texas operates upon that particular property, and the lien thereon is established through possession, and does not follow the property into the hands of subsequent owners. Cassidy Southwestern Commission Co. v. Duval County (Tex. Com. App.) 3 S. W.(2d) 416, and inferentially, Richey v. Moor, 112 Tex. 493, 249 S. W. 172. Though see, also, City of Chattanooga v. Hill (C. C. A.) 139 F. 600; S. Alex Smith & Co. (D. C.) 289 F. 524; State of Minnesota v. Central Trust (C. C. A.) 94 F. 244; Texas Employers' Ins. Ass'n v. City of Dallas (Tex. Civ. App.) 5 S.W.(2d) 614. It also seems that the tax arises against such property as is on hand on the 1st of January. The Dallas city ordinance fixing liens for taxes upon all property may be broader than the state statute. If so, such ordinance would fall. In the present cases, however, the proration ruled by the referee meets the facts. A lien would not exist for a tax that was not owed. A lien would not exist for a landlord which would be superior to a tax that had in reality been fixed.

It appears to the court that the matters have been correctly ruled.