**In re BRANNON et al.**
**CITY OF DALLAS et al. v. RYAN et al.**
No. 6476.

Circuit Court of Appeals, Fifth Circuit.
Jan. 18, 1933.

Rehearing Denied Feb. 20, 1933.

H. P. Kucera, Geo. K. Holland, R. G. Scurry, and Tom C. Clark, all of Dallas, Tex., and R. M. Rowland and R. E. Rouer, both of Ft. Worth, Tex., for appellants.

George Sergeant, of Dallas, Tex., for appellees.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

Similar questions arising in the distribution of two estates in bankruptcy were dealt with in one judgment in the District Court, and by stipulation are reviewed in one appeal here. In Brannon's estate the trustee has $331.05 arising from the sale of personal property. Claims for wages earned within three months before bankruptcy, totalling $253.13, state and county taxes (1931) $56.42, and taxes of city of Dallas (1928, 1930, 1931) $51.12, and landlord's claim for rent $1,350 have been allowed and for each a lien is claimed under state statutes. In Bayer's estate the trustee has $785.49 arising from the sale of merchandise and fixtures, and there have been allowed claims for wages earned within thirteen weeks before bankruptcy aggregating $624, state and county taxes (1928, 1929, 1930, 1931) $395.08, taxes of city of Dallas (1929, 1930, 1931) $432.60, and a landlord's claim for rent $3,035.19. For these also liens are claimed under state statutes. The referee's ruling affirmed in the District Court was that section 64 of the Bankruptcy Act (11 USCA § 104) fixing priorities in the distribution of an estate in bankruptcy controlled; that the so-called liens for taxes, wages, and rent under the state law were really only priorities under those laws referred to in section 64b (7) as amended in 1926, 11 USCA § 104 (b) (7), and were not liens preserved under section 67 (11 USCA § 107). Accordingly wages were held to be payable first, taxes next, and landlord's claims last. In re Brannon, 53 F.(2d) 401.

We reach a different conclusion. Section 64 gives the rule for paying out the money arising from the bankrupt's property which remains for general distribution after all special liens and incumbrances have been dealt with. City of Tampa v. Com. Bldg. Co. (C. C. A.) 54 F.(2d) 1057; In re Tresslar (D. C.) 20 F.(2d) 663; Polk County v. Burns (C. C. A.) 247 F. 399; Lott v. Salsbury (C. C. A.) 237 F. 191; In re Hosmer (D. C.) 233 F. 318; In re Rauch (D. C.) 226 F. 982. Before a dividend is made to general creditors the section requires payment in full of seven classes of claims, which briefly stated are: (1) Costs of preserving the estate; (2) advanced court costs; (3) cost of administration; (4) costs of litigation over composition; (5) wages earned within three months; (6) taxes; (7) debts to persons having a priority under state or federal law. These seven classes are not secured claims, i. e., such as had before bankruptcy a lien on the property of the bankrupt. The taxes in (6) are such as have no lien, as was the case in City of Richmond v. Bird, 249 U. S. 174, 39 S. Ct. 186, 63 L. Ed. 543, and New Jersey v. Anderson, 203 U. S. 483, 27 S. Ct. 137, 51 L. Ed. 284. The priorities in (7) are such preferences as may on insolvency be given by law to debts due the sovereign, to a debt due by a trustee, or for rent or the like, but unsecured by any previous lien. Typical examples are the priority given debts due the United States on insolvency by Rev. St. § 3466, 31 USCA § 191, excluded from section 64 by Davis v. Pringle, 268 U. S. 315, 45 S. Ct. 549, 69 L. Ed. 974, but put back by the amendment of 1926; and the priority given claims for materials by the Kentucky statute dealt with in Re Bennett (C. C. A.) 153 F. 673. Of the latter it is said in Globe Bank & Trust Co. v. Martin, 236 U. S. at page 302, 35 S. Ct. 377, 382, 59 L. Ed. 583: "Under our system of bankruptcy, and in the administration of assignments under state laws, there are certain persons, such as those furnishing material or labor, that, in certain specified ways, are given preference in the distribution of insolvent estates. It is a statutory lien of that kind with which the court dealt in Re Bennett." On the other hand, where the creditor before the bankruptcy has an established lien on the bankrupt's property which binds it as to third persons and which is not invalidated by the bankruptcy, he does not come under the operation of section 64. He is a secured creditor. Section 1 (23), 11 USCA § 1 (23). He cannot vote in the bankruptcy proceedings, nor have his claim counted in estimating number or amount of claims except for the unsecured balance, if any. Section 56b, 11 USCA § 92 (b). The court may estimate this balance and allow his claim to this extent for voting purposes. Section 57e, 11 USCA § 93 (e). Priority claims are in this respect treated the same way but are carefully distinguished from secured claims. Id. The security held by the secured creditor is to be converted into money or valued by agreement or arbitration or litigation and credited on the secured claim, and the balance, if any, stands for a dividend with other unsecured claims. Section 57a, 11 USCA § 93 (a). Section 67 deals with liens. Subsection (d) expressly preserves "liens given or accepted in good faith and not in contemplation of or in fraud upon the provisions of this title, and for a present consideration, which have been recorded according to law, if record thereof was necessary, * * * to the extent of such present consideration only." These words seem specially applicable to contract liens, and it has sometimes been said that

only such are preserved thereby. But most statutory liens are but incidents which the law annexes to a contract. The section expressly invalidates (a) such liens as require record but have not been recorded; (e) those created by certain legal proceedings including attachments begun within four months before bankruptcy; (e) transfers in fraud of creditors made within four months of bankruptcy; (f) levies, judgments, and other liens obtained by legal proceedings within four months of bankruptcy. The section does not in terms either preserve or invalidate liens arising from legal proceedings which are more than four months old at bankruptcy, nor does it mention statutory liens not arising from legal proceedings unless they are to be included under section 67d. The view generally taken is that true liens, however arising, which are not expressly invalidated by the Bankruptcy Act, remain good, and the trustee takes his title under section 70 (11 USCA § 110) subject to them. This was held of a judgment lien more than four months old in Straton v. New, 283 U. S. 318, 51 S. Ct. 465, 75 L. Ed. 1060. And the general lien of a landlord under a Georgia statute, which dates only from the levy of a distress warrant upon particular property, was held not to be destroyed under section 67, although the levy was made within four days before bankruptcy. Henderson v. Mayer, 225 U. S. 631, 32 S. Ct. 699, 56 L. Ed. 1233. So as to a landlord's lien under the Virginia statute in Richmond v. Bird, 249 U. .S. 174, 39 S. Ct. 186, 63 L. Ed. 543. Statutory liens annexed to contracts have been generally upheld in bankruptcy where the statutory prerequisites have been complied with. In this circuit alone may be noted the following cases: A seller's lien in Norris v. Trenholm (C. C. A.) 209 F. 827; a Louisiana rent lien in Fudickar v. Glenn (C. C. A.) 237 F. 808; a mechanic's lien in Morgan v. First National Bank (C. C. A.) 145 F. 466, and Eggleston v. Birmingham Purchasing Co. (C. C. A.) 15 F.(2d) 529; a Texas rent lien in Martin v. Orgain (C. C. A.) 174 F. 772, and In re McLaughlin (D. C.) 10 F.(2d) 810; a materialman's lien in Re Oconee Milling Co. (C. C. A.) 109 F. 866, and In re Georgia Handle Co. (C. C. A.) 109 F. 632. A tax lien was upheld in City of Tampa v. Commercial Building Co. (C. C. A.) 54 F. (2d) 1057, and In re Tresslar (D. C.) 20 F.(2d) 663. That lienors do not come within the distribution provisions of section 64 is also plain from the decisions that they do not have to contribute to the costs of the bankruptcy, which are the first items to be paid on a distribution under section 64, unless the lienor has invoked the aid of the court, nor then except as to the direct and necessary expense of preserving and realizing on his security. Gugel v. New Orleans Nat. Bank (C. C. A.) 239 F. 676; In re Williams' Estate (C. C. A.) 156 F. 934; In re Cutler & John (D. C.) 228 F. 771. We therefore think this case must be solved by ascertaining whether the present claimants had liens on the bankrupt's property, and by paying them in the order of their dignity as such.

The wage claimants had an inchoate lien under Rev. St. of Texas 1925, article 5483, but recording within thirty days is by article 5486 made necessary to fix and preserve the lien. It is conceded that this was not done. They therefore have no statutory lien. Peacock v. Morgan, 61 Tex. Civ. App. 193, 128 S. W. 1191; Eads & Co. v. Honeycutt (Tex. Civ. App.) 185 S. W. 1030; Farmers' Elevator Co. v. Advance Thresher Co. (Tex. Civ. App.) 189 S. W. 1018; Security Trust Co. v. Roberts (Tex. Com. App.) 208 S. W. 892. So far as our decision in Re Woulfe & Co., 239 F. 128, is to the contrary it is disapproved.

Landlords by article 5238 have a lien on all property of the tenant on the rented premises for rent due or to become due, and no record or other action is necessary to perfect it for arrears not exceeding six months. Marsalis v. Pitman, 68 Tex. 624, 5 S. W. 404. We see no reason to doubt that in Bayer's estate the landlord has such a lien on the proceeds of the merchandise and fixtures. We cannot tell certainly from the record whether the personal property sold in Brannon's estate was on the rented property or not, but that seems not to be denied.

In ascertaining whether under Texas law state, county, or city taxes have a lien adhering to the property or a mere priority arising on insolvency, we need to look to the Constitution, the general statutes, and the charter of the city of Dallas, which is a special act of the Legislature. Article 8, § 15, of the Constitution, reads: "The annual assessment made upon landed property shall be a special lien thereon; and all property, both real and personal, belonging to any delinquent taxpayer shall be liable to seizure and sale for the payment of all the taxes and penalties due by such delinquent; and such property may be sold for the payment of the taxes and penalties due by such delinquent, under such regulations as the Legislature may provide."

. This section establishes a lien on land for taxes assessed against it. No lien in advance of seizure is provided on personalty, which is left to pass unencumbered from hand to hand. There is, however, nothing in the language to prohibit the Legislature, in providing for the collection of taxes on personalty and as an aid thereto, from establishing tax liens on it. There are a number of statutory provisions for summarily seizing and selling personal property for state and county taxes when delinquent, and some provisions for such action in advance of delinquency when the property is about to be removed from the county or in cases of assignment to creditors or the insolvency or the death of the taxpayer. None of these statutes mention the creation of a lien except articles 7048 and 7269. The former relates to stocks of merchandise only, and provides that, in cases where the owner has rendered them for taxes or owes an occupation tax and then becomes bankrupt or makes an assignment of his merchandise, the tax collector shall at once demand the payment of the taxes, and, if they are not paid, he shall seize and sell enough of the merchandise to pay the taxes, "and said taxes, until paid, shall constitute a prior lien on said merchandise, goods and wares in default of said taxes." We understand that the merchandise may be freely sold in the usual course of business, with no lien for taxes following it. It is only in case of insolvency or assignment, and against the complications then arising that a lien is set up. It is an effort to provide a preference in payment on insolvency, and is a priority under a state law rather than a true lien on property in subjection to which the title of the trustee in bankruptcy vests. Article 7269 relates to all sorts of property, and provides that, where a taxpayer makes an assignment to creditors, or his property is levied on, or he dies and leaves an insolvent estate and his taxes are unpaid, "the amount of such unpaid taxes shall be a first lien upon all such property." The taxes are to be paid by the assignee, sheriff, or administrator, and, if not, the tax collector shall levy on and sell the property in whosesoever hands found. Here again no lien exists until the happening of specified events similar to a bankruptcy. There is no incumbrance superior to the trustee's title, but only a priority of payment on insolvency. Therefore, so far as state and county taxes are concerned, we find no lien securing them within the meaning of the Bankruptcy Act. They stand not as secured debts but as debts having priority under the state laws on insolvency, and would fall under section 64b (7), but since they are also taxes, in that character they fall under section 64b (6).

The city taxes have been better cared for by the statutes. Article 1063 gives the cities the benefit of the general tax laws, but article 1060 goes further, providing: "All taxes shall be a lien upon the property upon which they are assessed." Section 194 of the charter of the city of Dallas is still more liberal, reading: "A lien is hereby created on all property, personal and real, in favor of the City of Dallas for all taxes, ad valorem, occupation or otherwise. Said lien shall exist from January 1st in each year until all the taxes are paid. Such lien shall be prior to all other claims and no gift, sale, assignment or transfer of any kind or judicial writ of any kind can ever defeat such lien." We think a true general lien for all city taxes is given the city of Dallas by the language last quoted, which adheres to the property notwithstanding its transfer and which, requiring no record, is good as a lien in bankruptcy. All property of the taxpayer falls under it, so that it is unnecessary to identify that assessed for the particular tax.

We find the cases in the state courts which have been pressed upon our notice not in conflict with these conclusions touching taxes. Zachary v. City of Uvalde (Tex. Com. App.) 42 S.W.(2d) 417, concerned a city tax on land, as appears from the fuller report of the case in (Tex. Civ. App.) 24 S.W.(2d) 517. The Constitution, as we have seen, fixes a lien on land for its taxes. See, also, Rev. St. art. 7172. The true meaning of the decision is that, without a city ordinance asserting a lien, the statutes referred to in the opinion gave the city taxes a status like that given state and county taxes on land. No special charter provisions were involved. In Texas Employers' Insurance Association v. City of Dallas (Tex. Civ. App.) 5 S.W.(2d) 614, the city's charter lien for taxes on personalty was recognized and enforced. In Cassidy Southwestern Commission Co. v. Duval County (Tex. Com. App.) 3 S.W.(2d) 416, state and county taxes were assessed on 700 steers, 650 of which were sold and the remaining 50 taken over by a mortgagee of them. They were later seized for the taxes due on all 700. The mortgagee paid the taxes due on the 50 steers, but resisted payment of the remainder. The court held that, while the Constitution fixes a lien for taxes on land assessed, none is provided by it or by the statutes relating to state and county taxes as to personal property until seizure except in

the special case described in article 7269; and that the mortgagee took the 50 steers clear of the taxes due on the others. In Mission Independent School District v. Armstrong (Tex. Com. App.) 222 S. W. 201, school taxes were assessed for 1912 and 1913 against removable fixtures treated as personal property of an oil company. The property was sold in January, 1914, to Armstrong. The school district had all the rights and powers as to its taxes that are conferred by law on cities. The statutes having to do merely with seizure and sale were said to create no liens, but article 958 touching city taxes (which is now article 1060), in its language "all taxes shall be a lien upon the property upon which they are assessed," did fix a lien from the date of assessment on the property assessed which was held good against the purchaser, Armstrong. City of Fort Worth v. Boulware, 26 Tex. Civ. App. 76, 62 S. W. 928, dealt with a charter lien for city taxes less broad than that of the city of Dallas.

We therefore think that the taxes due the city of Dallas have a first and general lien and must be first satisfied. The landlords have also a valid lien on the proceeds of personalty on the rented premises which comes next. The state and county taxes and wage claimants have no lien, but fall under the priorities established by section 64, the wages earned within three months taking priority over the state and county taxes. The cause is reversed and remanded, with direction to pay out of Brannon's estate $51.12 and accrued interest to the city of Dallas, and the remainder on the lien for rent; and out of Bayer's estate $432.60 with accrued interest to the city of Dallas and the remainder on the lien for rent.